## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

ADRIENNE LEWIS, by and on behalf    *
of the minor child LIYAH           *   CIVIL DOCKET NUMBER: 3:16-cv-352
ALEXANDRIA JOHNSON,        *
                              *
       Plaintiff,              *
                              *   SECT:
VERSUS                       *
                              *   JUDGE:
EAST BATON ROUGE PARISH;    *
SHERIFF SID J. GAUTREAUX, III,   *
SHERIFF OF EAST BATON ROUGE  *
PARISH; LIEUTENANT COLONEL    *   MAG:
DENNIS GRIMES, WARDEN OF     *
EAST BATON ROUGE PARISH      *
PRISON; LIEUTENANT MICHAEL    *
DUPLESSIS; DEPUTY AVERY      *
KUJAWA; DEPUTY DALTON       *
CANEZARO; CORPORAL CEDRIC   *
BUCKNER; EMERGENCY MEDICAL  *
SERVICES; CHAD GUILLOT,      *
INTERIM ADMINISTRATOR,     *
EMERGENCY MEDICAL SERVICES;  *
PRISON MEDICAL SERVICES;     *
RINTHA SIMPSON, INTERIM      *
DIRECTOR, PRISON MEDICAL     *
SERVICES; J. DOES #1-99; ABC     *
INSURANCE COMPANY.        *
                              *
       Defendants.          *
                              *

*******************************

## COMPLAINT

     Adrienne Lewis, by and on behalf of the minor child Liyah Alexandria Johnson, files this Complaint based on the defendants' failure to protect from harm and deliberate indifference to the serious medical needs of Lamar Alexander Johnson, the father of Liyah Johnson. Lamar Johnson ("Mr. Johnson") died as a result of both explicit and *de facto* policies and practices by the defendants that operate the East Baton Rouge Parish Prison ("EBRPP") in an unconstitutionally violent and dangerous manner. In addition, the defendants are deliberately indifferent to the

1

serious medical and mental health needs of all prisoners in the EBRPP, including individually towards Mr. Johnson, which resulted in Mr. Johnson's death.  The defendants' explicit and *de facto* policies and practices and deliberate indifference violated Mr. Johnson's right to due process and to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the U.S. Constitution.

In support of these claims, Adrienne Lewis, by and on behalf of the minor child Liyah Johnson ("Plaintiff"), shows as follows:

## I.    JURISDICTION

1.

This action is brought pursuant to 42 U.S.C. § 1983, pursuant to the Eighth and Fourteenth Amendments to the United States Constitution.  Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343, and the aforementioned statutory and constitutional provisions.  In addition, Plaintiffs invoke supplemental jurisdiction over claims under state constitutional and statutory law pursuant to 28 U.S.C. §1367.

## II.    PARTIES

2.

Liyah Alexandria Johnson is the minor child of Mr. Johnson (deceased) and appears through her mother and natural tutrix **ADRIENNE LEWIS**, who is a person of the full age of majority and a resident of Louisiana currently domiciled in New Orleans, Louisiana.

3.

**LIYAH ALEXANDRIA JOHNSON** is the minor child of **LAMAR JOHNSON**.

Named defendants herein are:

4.

**PARISH OF EAST BATON ROUGE ("PARISH")** is a political entity capable of suing and being sued. The **PARISH** is the entity responsible for funding operations of the EBRPP. The **PARISH** negotiates, approves, funds, and enters into contracts with other entities to provide medical and mental health services at the jail.

5.

**SHERIFF SID J. GAUTREAUX, III (hereinafter, "GAUTREAUX")** a person of full age of majority and a resident of Louisiana, in his individual and official capacity as the Sheriff of East Baton Rouge Parish. At all times described herein, **GAUTREAUX** was the ultimate policy-maker for the East Baton Rouge Parish Sheriff's Office, and was responsible for the hiring, training, supervision, discipline and control of appropriate staff to maintain the care, custody, and control of prisoners in the custody of the East Baton Rouge Parish Sheriff's Office. He was responsible for all staffing levels of the EBRPP. He was also responsible for the supervision, administration, policies, practices, customs, and operations of EBRPP. **GAUTREAUX** was and is a final policy maker and at all pertinent times acting under color of law. He is liable both directly for the unconstitutional actions and vicariously for the state law actions complained of herein.

6.

**LIEUTENANT COLONEL DENNIS GRIMES (hereinafter, "GRIMES")** a person of the full age of majority and a resident of Louisiana, in his individual and official capacity as warden of the EBRPP. At all times described herein, **GRIMES** was the Warden of the EBRPP, and as such was responsible for supervision, administration, policies, practices, customs, operations, training of staff, and operation of the EBRPP. **GRIMES** was and is a final policy maker and at

all pertinent times acting under color of law.  He is liable both directly for the unconstitutional actions and vicariously for the state law actions complained of herein.

7.

**LIEUTENANT MICHAEL DUPLESSIS (hereinafter, "DUPLESSIS")** in his individual and official capacities as an employee of the East Baton Rouge Sheriff's Office and a supervisor of deputies.  **DUPLESSIS** is an adult citizen of the State of Louisiana and domiciled in Louisiana.  At all pertinent times, **DUPLESSIS** was employed by the East Baton Rouge Sheriff's Office and assigned as a supervisor to posts at the EBRPP in locations where Mr. Johnson was housed.   He was responsible for ensuring appropriate care, custody, and control occurred, including respecting all prisoners' rights, including those of Mr. Johnson, and for communicating serious medical conditions, including mental health concerns and risks of suicide, of prisoners to appropriate medical staff and/or mental health professionals.   He was also responsible for supervising deputies on their shifts to ensure that deputies under his supervision carried out all duties in accordance with their obligations to respect all prisoners' rights.  **DUPLESSIS** is liable both directly for the unconstitutional actions and vicariously for the state law actions complained of herein.  **DUPLESSIS** acted under the direction of defendants Sheriff **GAUTREAUX** and Warden **GRIMES**.

8.

**DEPUTY AVERY KUJAWA, DEPUTY DALTON CANEZARO**, and **CORPORAL CEDRIC BUCKNER** in their individual and official capacities as employees of EBRPP. **KUJAWA, CANEZARO**, and **BUCKNER** are all adult citizens and residents of Louisiana.  At all pertinent times, **KUJAWA, CANEZARO**, and **BUCKNER** were employed by the East Baton Rouge Sheriff's Office and assigned to posts at the EBRPP in locations were Mr. Johnson was housed, where he exhibited extreme emotional distress, and for **KUJAWA** and **CANEZARO**,

where Mr. Johnson was found hanging.  They were responsible for ensuring that appropriate care, custody, and control occurred, including respecting Mr. Johnson's rights, and for communicating serious medical conditions, including mental health concerns and risks of suicide, of prisoners to appropriate medical staff and/or mental health professionals.  They acted under the direction of defendants Sheriff **GAUTREAUX** and Warden **GRIMES**.

9.

**EMERGENCY MEDICAL SERVICES**, a Division of the City of Baton Rogue/Parish of East Baton Rogue (hereinafter, "**EMS**") was at all relevant times the entity with which the East Baton Rouge Sheriff's Office and the **PARISH** contracted to provide medical and mental health services to prisoners at the EBRPP.  On information and belief, **EMS** is the parent organization of **PRISON MEDICAL SERVICES**.  **EMS** was responsible for the provision of all staffing, training, policies and procedures for all medical and mental health personnel at EBRPP.

10.

**CHAD GUILLOT** was at all relevant times the interim administrator of **EMS** and ultimately responsible for **PMS**.  **GUILLOT** is an adult resident of and domiciled in Louisiana. As interim administrator of **EMS, GUILLOT** was responsible for the policies and procedures and hiring, training, staffing of all personnel of the infirmary and provision of health and mental care provided at the EBRPP in execution of the contract for services made with the East Baton Rouge Sheriff's Office and the **PARISH**.  **GUILLOT** is liable both directly for the unconstitutional actions and vicariously for the state law actions complained of herein.

11.

**PRISON MEDICAL SERVICES**, a Department of Emergency Medical Services, a Division of the City of Baton Rouge/Parish of East Baton Rouge (hereinafter referred to as "PMS"), was at all relevant times the entity with which the East Baton Rouge Sheriff's Office and

the **PARISH** contracted to provide medical and mental health services to prisoners at the EBRPP. **PMS** was responsible for the provision of all staffing, training, policies and procedures for medical and mental health personnel at EBRPP.

12.

**RINTHA SIMPSON** was at all relevant times the interim director of **PMS**, an adult resident of domiciled in Louisiana.  As interim director of **PMS, SIMPSON** was responsible for the policies and procedures and hiring, training, staffing of all personnel of the infirmary and provision of health and mental provided at the EBRPP in execution of the contract for services made with East Baton Rouge Sheriff's Office and the **PARISH**.  **SIMPSON** is liable both directly for the unconstitutional actions and vicariously for the state law actions complained of herein.

13.

**J. DOES #1-49** were at all relevant times Louisiana registered nurses and adult residents of Louisiana who were acting under color of state law and were employees or agents of **PMS**.  **J. DOES #1-49** are liable both directly for the unconstitutional actions and vicariously for the state law actions complained of herein. The Plaintiff is unaware of the true names and capacities of these Defendants and therefore sues those persons by fictitious names.  Plaintiff will amend this Complaint to allege their true names and capacities when ascertained and intends to seek immediate discovery from the Defendants to determine the identity of John Does 1-49.

14.

**J. DOES #50-99** were at all relevant times adult residents of Louisiana who were acting under color of state law and were employees or agents of the defendants Sheriff **GAUTREAUX** and Warden **GRIMES**.  **J. DOES #50-99** are liable both directly for the unconstitutional actions and vicariously for the state law actions complained of herein. The Plaintiff is unaware of the true names and capacities of these Defendants and therefore sues those persons by fictitious names.

Plaintiff will amend this Complaint to allege their true names and capacities when ascertained and intends to seek immediate discovery from the Defendants to determine the identity of John Does 50-99.

15.

**ABC INSURANCE COMPANY** is a domestic or foreign insurance corporation authorized to do and doing business in the State of Louisiana, which, upon information and belief, at all times mentioned herein provided defendants **PARISH** and the office of **SHERIFF SID GAUTREAUX, III** with a policy of liability insurance for the acts complained of herein. The Plaintiff is unaware of the true name of this Defendant and therefore sues by a fictitious name. Plaintiff will amend this Complaint to allege Defendant's true name when ascertained and intends to seek immediate discovery from the Defendants to determine the identity of ABC INSURANCE COMPANY.

### III.   FACTUAL ALLEGATIONS

16.

On or about May 26, 2015, Mr. Johnson was arrested by City of Baker, LA, police after a routine traffic stop for tinted windows.  Video and audio of the arrest show Mr. Johnson to be relaxed, engaged, and in complete control of his emotions.  Within an hour he was booked into the EBRPP because Jefferson Parish authorities placed a hold on Mr. Johnson for a four-year old arrest warrant for a non-violent charge.

17.

After spending almost a day in the central booking portion of EBRPP, Mr. Johnson was moved to Unit I's Q8 dorm.  On information and belief, Q8 is segregated by race and reserved exclusively for African-American male prisoners.

18.

Q8 dorm is one of the largest and most dangerous dorms in EBRPP.  On information and belief, Q8 shares a dayroom and living area with Q7; EBRPP authorities choose to assign only one to two staff to monitor the combined eighty to one hundred prisoners.  Guards rarely monitor the living areas.  Defects in physical design and manner of operation, including inadequate staffing, inadequate supervision techniques, and poor sightlines, produce frequent violence and a continuous pattern of constitutional deprivations for the prisoners in EBRPP, including Mr. Johnson.

19.

On information and belief, EBRPP guards participate in, and profit by, or at least negligently permit, the smuggling of drugs into EBRPP, primarily "mojo," synthetic marijuana. Mojo is readily accessible by prisoners inside EBRPP and, on information and belief, was ingested by Mr. Johnson when he was housed on Q8.

20.

Mr. Johnson's reaction to mojo was severe.  He suffered paranoid delusions and began talking out loud to himself.  His extreme emotional distress was apparent to anyone within sight and sound of Mr. Johnson.  Rather than provide any medical or mental health care, EBRPP staff ignored Mr. Johnson's serious mental health needs.  On information and belief, they also assaulted him.  This violent and abusive response by EBRPP employees exacerbated Mr. Johnson's condition, making him more paranoid and delusional.

21.

The only official document from EBRPP reflecting Mr. Johnson's experience in Unit I's Q8 dorm is a "disciplinary report" issued by defendant BUCKNER and approved by defendant

DUPLESSIS.  In his report, BUCKNER fails to accurately reflect Mr. Johnson's emotional distress and instead seeks to punish Mr. Johnson for requesting that he be moved out of Q8.

22.

Another official document from EBRPP notes that Mr. Johnson was moved to EBRPP's Unit II "for protection."  Although no official document available through requests for public records notes that Mr. Johnson was in any emotional distress, eyewitness reports of Mr. Johnson's condition describe a deranged, paranoid, and suicidal person.  On information and belief, defendants BUCKNER, KUJAWA, CANEZARO, and J. DOES #1-99 witnessed Mr. Johnson's extreme emotional distress and suicidal ideation and chose to ignore his condition, and in the case of J. DOES #50-99, abused Mr. Johnson and made his condition worse.

23.

Despite the obvious indications that Mr. Johnson was suffering an emotional breakdown and in acute mental health distress, EBRPP failed to perform a mental health assessment of Mr. Johnson.  On information and belief, no medical or mental health care professional ever evaluated or intervened to insure Mr. Johnson's safety.

24.

Despite Mr. Johnson's open and notorious emotional distress, EBRPP staff placed Mr. Johnson in Unit II's M01 wing, a row of solitary isolation cells.  EBRPP documents conflict on how much time Mr. Johnson spent in solitary isolation.  According to the documents, Mr. Johnson either spent more than twenty-four or fewer than twenty hours in solitary isolation.  The EBRPP documents state that Mr. Johnson was permitted out of his cell for a total of seven minutes.

25.

Official EBRPP documents prepared by defendants KUJAWA and CANEZARO claim that KUJAWA conducted monitoring rounds of Unit II's M01 isolation cells approximately every

thirty minutes during the early morning hours of May 30, 2015.  From 7:11 to 9:43 a.m. on May 30, 2015, KUJAWA claims he made six rounds to monitor prisoners in Unit II's M01 isolation cells.  Upon each alleged contemporaneous entry, KUJAWA wrote "inmates appear to be resting."  From 7 to 10:10 a.m. on May 30, 2015, CANEZARO claims KUJAWA made four rounds to monitor prisoners in Unit II's M01 isolation cells.  Upon each alleged contemporaneous entry, CANEZARO wrote "all seems secure."  Depending on which EBRPP official document is accurate, Mr. Johnson was "secure" and "resting" at either 10:10 a.m. (CANEZARO) or 9:43 a.m. (KUJAWA).

26.

According to official documents from EBRPP, on May 30, 2015, at 10:22 a.m., Mr. Johnson was found hanging from his cell bars.  Mr. Johnson left EBRPP on a stretcher, brain damaged, but alive.  He died a few days later at a local hospital.

27.

Defendants KUJAWA, CANEZARO, and J. DOES #50-99, as the result of *de facto* policies and practices permitted by defendants GAUTREAUX and GRIMES, failed to document the locations of prisoners.  On information and belief, this allows, as in Mr. Johnson's case, EBRPP staff to move prisoners around the facilities with no accountability or supervision.  Indeed, no official document from EBRPP exists that indicates Mr. Johnson was ever transferred to Unit II, M01 cell seventeen, where he hanged himself.

28.

Defendants KUJAWA, CANEZARO, and J. DOES #50-99, as the result of *de facto* policies and practices permitted by defendants GAUTREAUX and GRIMES, failed to monitor prisoner living areas, including the isolation cells in Unit II's M01.  On information and belief, M01 is designated for prisoners with serious mental health needs and contains at least two cells

designated for suicidal prisoners—cells one and two—because they are close to the control unit occupied by EBRPP staff.  Such proximity allows monitoring of suicidal prisoners without having to physically make monitoring rounds, i.e. walk the hallway in front of the cells.  Defendants KUJAWA and CANEZARO, by failing to place Mr. Johnson in cell one or two, and by failing to physically walk the halls to monitor Mr. Johnson's cell even though they had knowledge of his acute emotional distress, permitted Mr. Johnson to hang himself.

29.

Defendants KUJAWA, CANEZARO, and J. DOES #50-99, as the result of *de facto* policies and practices permitted by defendants GAUTREAUX and GRIMES, falsely documented that EBRPP staff make regular monitoring rounds to supervise prisoners.

30.

Defendants KUJAWA, CANEZARO, BUCKNER, DUPLESSIS, and J. DOES #50-99, as the result of *de facto* policies and practices permitted by defendants GAUTREAUX and GRIMES, failed to provide Mr. Johnson sufficient access to qualified medical and mental health care.

31.

Defendants EMS, PMS, CHAD GUILLOT, and RINTHA SIMPSON (MEDICAL DEFENDANTS) failed to adequately staff and train employees responsible for providing constitutionally adequate medical and mental health care at EBRPP.  As the result of *de facto* policies and practices permitted by MEDICAL DEFENDANTS and defendants GAUTREAUX and GRIMES, EBRPP employees are not trained and/or supervised to address and refer prisoners' serious medical and mental health care needs to EMS and/or PMS, including those exhibited by Mr. Johnson, resulting in deliberate indifference to prisoners' serious medical and mental health care needs.

32.

Defendant PARISH failed to provide sufficient funding and oversight to all defendants, resulting in unconstitutional conditions of confinement at the EBRPP.  The PARISH's explicit policy of not sufficiently funding and overseeing the EBRPP caused defects in physical design and manner of operation, including inadequate staffing, inadequate supervision techniques, and/or poor sightlines at the EBRPP, resulting in a continuous pattern of constitutional deprivations for all prisoners in EBRPP, including Mr. Johnson.

33.

The failures of all defendants are well known and consistent with a pattern and practice resulting in a decrepit physical plant, rampant violence, and deliberate indifference to the serious medical and mental health care needs of prisoners at EBRPP, including the following examples:

a.     Since 2013, at least four people died at the jail due to inadequate medical and mental health care;

b.     In February of 2015, defendant GRIMES publically acknowledged that cell doors in the EBRPP do not open and shut due to rust, the layout of the prison makes it difficult to monitor prisoners, and overpopulation requires sending hundreds of prisoners to other parishes;

c.     In October of 2015, a Baton Rouge elected officials complained of a study into the medical care at EBRPP, noting that "the council already knows about numerous problems" including understaffing, medical equipment shortages, and insufficient compensation for medical professionals;

d.     Also in October of 2015, defendant GAUTREAUX was cited as requesting a new jail "for years" and that "officials long ago identified the problem: a dilapidated facility that is ill-equipped to hold . . . mentally ill who are booked";

e.     In February of 2016, a seventeen-year-old boy died at the hands of his cellmate. Even though witnesses could hear the victim cry "I give up," EBRPP staff did not intervene in time to stop the murder.

These examples indicate a culture of violence and indifference to prisoner welfare that is harmful to all prisoners, including to Mr. Johnson.

34.

At all times relevant to this complaint, defendants acted under color of state law.

35.

At all times mentioned herein, all the defendants named in their individual capacities were employed by the defendants, SHERIFF SID GAUTREAUX, EMS, or PMS, and were acting in the course and scope of their employment with defendants SHERIFF SID GAUTREAUX, EMS, or PMS.

36.

All of the defendants are liable to the plaintiffs for compensatory and punitive damages.

37.

All of the defendants are liable jointly, severally, and in solido for the plaintiffs' injuries.

38.

The defendants' actions were reckless, willful, wanton, and malicious, and constituted deliberate indifference to the rights of the plaintiffs. The defendants' actions were the proximate cause of the injuries and death of Mr. Johnson and the damages of the plaintiffs.

## IV.   CAUSES OF ACTION

**COUNT 1 — § 1983 Violation Based on Establishment of a System in which Prisoners with Serious Mental Health Issues are Denied Access to Appropriate Medical Care — Defendants GAUTREAUX and PARISH GOVERNMENT (Official Capacities)**

39.

The defendants named in this Count, acting individually and together, under color of law, violated the Mr. Johnson's right to be free from cruel and unusual punishment and the right to due process and equal protection of the laws as protected by the Fourteenth Amendments of the United States Constitution and 42 USC § 1983. They did so by coordinating with EMS and PMS to provide inadequate and insufficient services for medical and mental health care that they knew

would result in the deprivation of adequate medical and mental health care for prisoners with serious medical conditions, namely, serious mental health conditions.  Plaintiff was individually harmed by the insufficiency of the contract and the failure to make other accommodations to provide mental health services because they resulted in the death of Mr. Johnson, who was deprived of appropriate mental health and medical treatment after he was booked into EBRPP, which deprivation resulted in his death, as described above.

40.

At all pertinent times, the defendants named in this Count, individually and collectively, acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety, constitutional, and civil rights of Mr. Johson by failing to provide appropriate medical and mental health services.

**COUNT 2 – § 1983 Violation Based on Failure to Supervise Other Defendants to Ensure Inmates Received Appropriate Care for Serious Medical Needs— Defendants GAUTREAUX, GRIMES, EMS, PMS, GUILLOT, and SIMPSON (Individual and Official Capacities)**

41.

Defendants GAUTREAUX and GRIMES, in their individual and official capacities, failed to supervise their subordinates, namely Lt. DUPLESSIS, Deputy KUJAWA, Deputy CANEZARO, Corporal BUCKNER, and John Does #50-99, to ensure that these subordinates did not ignore prisoners' requests for medical and/or mental health treatment, fail to refer prisoners needing treatment to appropriate mental health professionals, and/or fail to properly monitor prisoners' who report suicidal ideation or show signs of mental health crisis.  The plaintiff was directly harmed by this failure to supervise because it caused the death of Mr. Johnson, who was either left untreated or received patently insufficient treatment for his serious medical and mental health needs from the specified defendants.  At all pertinent times herein, defendants

GAUTREAUX and GRIMES were aware of the need to supervise their subordinates in order to ensure that they did not violate prisoners' rights.  These defendants ignored that need and acted unreasonably and with deliberate indifference and disregard for the safety of Mr. Johnson, as described above.

42.

Defendants EMS, PMS, GUILLOT, and SIMPSON, in their individual and official capacities, failed to supervise their subordinates, namely JOHN DOES #1-49, to ensure that these subordinates did not ignore prisoners' requests and needs for medical and/or mental health treatment, and/or fail to refer inmates needing treatment to appropriate mental health professionals. They also failed to ensure that their subordinates provided reasonable and sufficient treatment for prisoners' conditions and properly monitored prisoners who were being treated.  The plaintiff was directly harmed by this failure to supervise because it caused the death of Mr. Johnson, who was either left untreated or received patently insufficient treatment for his serious medical and mental health needs from the specified defendants.  At all pertinent times herein, defendants EMS, PMS, GUILLOT, and SIMPSON, were aware of the need to supervise their subordinates in order to ensure that they did not violate prisoners' rights.  They ignored that need and acted unreasonably and with deliberate indifference and disregard for the safety of Mr. Johnson, as described above.

**COUNT 3 – § 1983 Violation Based on Deliberate Indifference to Mr. Johnson's Constitutional Right to Appropriate Medical and Mental Health Care— Defendants EMS, PMS, GUILLOT, SIMPSON, DUPLESSIS, KUJAWA, CANEZARO, BUCKNER, and JOHN DOES #1-99,   (Individual and Official Capacities)**

43.

The above-named defendants, acting individually and together, and under color of law, engaged in a course of conduct and conspired to engage in a course of conduct that acted to deprive Mr. Johnson of his constitutional rights and did deprive him of said rights, specifically, the right

to reasonable and adequate medical and mental health care, the right to be free from cruel and unusual punishment, the right to be free from unreasonable searches and seizures, and the right to due process and equal protection of the laws as protected by the First, Fourth, and Fourteenth Amendments and Article IV (Privileges and Immunities Clause) of the United States Constitution and 42 U.S.C. § 1983.  At all times pertinent herein, these defendants, acting individually and collectively, acted unreasonably, recklessly, maliciously, and/or with deliberate indifference and disregard for the constitutional and civil rights and life and serious medical needs of the deceased, Mr. Johnson.  Furthermore, these defendants, individually and collectively, had the duty and ability to intervene to prevent the violations of the rights of Mr. Johnson, as described herein, but failed to do so.

### COUNT 4 – *Monell* Violation of § 1983 Based on Establishment of Policies, Patterns or Practices pursuant to which Prisoners with Serious Mental Health Conditions are Denied Access to Appropriate Medical Care— Defendants GAUTREAUX, the PARISH, and EMS (Official Capacities)

44.

The defendants named in this Count, GAUTREAUX, the PARISH, and EMS, acting individually and together, under color of law, acted to violate Mr. Johnson's right to be free from cruel and unusual punishment and the right to due process and equal protection of the laws as protected by the Fourteenth Amendments of the United States Constitution and 42 USC § 1983. They did so by establishing and maintaining policies, patterns or practices that they knew would deprive prisoners with serious medical conditions, namely, serious mental health disorders, of treatment for those disorders.  On information and belief, there was furthermore a policy, pattern, and practice of staff members at EBRPP engaging in excessive use of force and verbal and physical abuse of prisoners suffering with mental illness.

45.

Mr. Johnson and the plaintiff were individually harmed by these policies, patterns, or practices because they resulted in the death of Mr. Johnson, who was deprived of appropriate mental health and medical treatment after he was booked into the EBRPP, and did not receive screening, evaluation and treatment for his acute and severe emotional and mental distress following the ingestion of drugs in the EBRPP, to wit, mojo.  These deprivations resulted in his death, as described above.

46.

At all pertinent times, the defendants named in this Count, individually and collectively, acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety, constitutional, and civil rights of the plaintiffs by establishing the above-described policies, patterns, or practices.

47.

The above-named defendants are therefore liable to the plaintiff for the violation of constitutional rights described above pursuant to *Monell v. Dept. of Soc. Servs*., 436 U.S. 658 (1978).

**COUNT 5 – § 1983 Violation Based on the *De Facto* Policy, as Evidenced by Extended, Pervasive Misconduct by EBRPP Staff, That Create Conditions and Treatment That Constitutes Impermissible Punishment of Prisoners Under the Due Process Clause— Defendants GAUTREAUX, GRIMES and PARISH GOVERNMENT (Official Capacities)**

48.

The defendants named in this Count, acting individually and together, under color of law, acted to violate the Mr. Johnson's right to be free from punishment without due process as protected by the Fourteenth Amendments of the United States Constitution and 42 USC § 1983. They did so by exposing prisoners at the EBRPP, including Mr. Johnson, to violent and dangerous conditions of confinement so extensive and pervasive that they reflect a *de facto* policy approved

by the defendants named in this Count.  Such policies and practices include, but are not limited to,

racial segregation of prisoner living areas, defects in physical design and manner of operation,

including inadequate staffing, inadequate supervision techniques, poor sightlines, and inadequate

monitoring of prisoner living areas that combined to result in frequent violence and a continuous

pattern of constitutional deprivations for the prisoners in EBRPP, including Mr. Johnson.   In

addition, defendants GAUTREAUX and GRIMES knew or should have known that guards engage

in illegal conduct including the falsifying of EBRPP monitoring logs, physical abuse of prisoners,

and participating in and profiting by, or at least negligently permitting, the smuggling of drugs into

EBRPP, primarily "mojo," synthetic marijuana.  The plaintiff was individually harmed by the *de

facto* policies and practices described above.

49.

At all pertinent times, the defendants named in this Count, individually and collectively,

acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety,

constitutional, and civil rights of the plaintiffs by failing to provide appropriate medical and mental

health services.

**COUNT 6 – *Monell* Violation of § 1983 Based on Unconstitutional Conditions of Confinement That Constitutes Impermissible Punishment of Prisoners Under the Due Process Clause— Defendants GAUTREAUX, GRIMES, and the PARISH (Official Capacities)**

50.

The defendants named in this Count, GAUTREAUX, GRIMES, and the PARISH, acting

individually and together, under color of law, acted to violate Mr. Johnson and the plaintiffs' right

to be free from cruel and unusual punishment without due process as protected by the Fourteenth

Amendment of the United States Constitution and 42 USC § 1983.  They did so by maintaining

18

policies, patterns or practices that created unconstitutional conditions of confinement that deprived prisoners, including Mr. Johnson, of basic human needs, including physical safety.

51.

Mr. Johnson and the plaintiffs were individually harmed by these policies, patterns, or practices because they resulted in the death of Mr. Johnson, who was exposed to a continuous pattern of deprivations which clearly violated the United States Constitution.  The policies and practices adopted by the defendants in this Count, whether explicit or *de facto* as evidenced by the extended and pervasive misconduct by EBRPP and PARISH officials, include but are not limited to: inadequate staffing, inadequate supervision techniques, inadequate monitoring of prisoner living areas, falsifying of EBRPP monitoring logs, physical abuse of prisoners, participating in and profiting by, or at least negligently permitting, the smuggling of drugs into EBRPP, and poor sightlines.  These constitutional violations resulted in Mr. Johnson's death, as described above.

52.

At all pertinent times, the defendants named in this Count, individually and collectively, acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety, constitutional, and civil rights of the plaintiffs by establishing the above-described policies, patterns, or practices.  The above-named defendants are therefore liable to the plaintiff for the violation of constitutional rights described above pursuant to *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978).

**COUNT 7 – State Claim of Negligent and/or Intentional Conduct Resulting in Injury and Death— Defendants  LT. DUPLESSIS, DEPUTY KUJAWA, DEPUTY CANEZARO, CORPORAL BUCKNER, AND J. DOES #1-99 (Individual Capacities)**

53.

The above-named defendants, acting individually and together, and under color of law, engaged in a course of conduct and conspired to engage in a course of conduct that caused injury

and harm to Mr. Johnson and ultimately led to his death.  At all times pertinent herein, these defendants, individually and collectively, acted intentionally, maliciously, recklessly, and/or negligently towards the deceased, Mr. Johnson.  Furthermore, these defendants, individually and collectively, had the duty and ability to intervene to prevent the tortious conduct of co-defendants toward Mr. Johnson, as described herein, but failed to do so.  They are therefore liable to the plaintiffs, as described herein.

## COUNT 8 – State Claim of Respondeat Superior Liability of Sheriff GAUTREAUX, EMS

54.

At all relevant times, the individually named defendants were acting in the course and scope of their employment with defendants **GAUTREAUX** and East Baton Rouge Sheriff's Office and **EMS**.  **GAUTREAUX** and **EMS** are therefore liable under the doctrine of *respondeat superior* for the actions and inactions of the individual defendants, as described herein.

## COUNT 9 – Loss of Consortium ALL DEFENDANTS

55.

Defendants are liable to LIYAH ALEXANDRIA JOHNSON, pursuant to La. C.C. 2315 (B) through 42 U.S.C. § 1983.  On behalf of the minor, Plaintiff seeks relief under La. C.C. art. 2315(b) on behalf of LIYAH ALEXANDRIA JOHNSON for loss of service, society, support, love and affection arising out of the injuries occasioned by the acts and/or omissions of the Defendants herein.

## COUNT 10 – Wrongful Death Claim of LIYAH ALEXANDRIA JOHNSON

56.

LIYAH ALEXANDRIA JOHNSON is a surviving child of LAMAR JOHNSON, who through her court-appointed tutrix, seeks to recover for the damages which she sustained as a result

of the death of her father due to the fault of Defendants in that she had a very close, loving supportive relationship with her father.

57.

The deceased left no surviving wife.

## COUNT 11 – Survival Action Claim of LIYAH ALEXANDRIA JOHNSON

1.

ADRIENNE, on behalf of the minor, seeks relief under La. C.C. art 2315.2, for the pain and suffering occurring before and during Mr. Johnson's death occasioned by the intentional and/or grossly negligent acts and/or omissions of the Defendants herein, and for all other relief as set forth herein.

## COUNT 12 – State Claim of Direct Action Against an Insurer, Pursuant to LA R.S. § 22:1269

58.

At all applicable times, defendant, ABC INSURANCE COMPANY, afforded liability insurance coverage to defendants GAUTREAUX and/or other defendants.  Accordingly, ABC INSURANCE COMPANY is liable to the plaintiffs for the intentional and/or negligent acts of the other defendants.

## COUNT 13 – State Claim for Breach of Duty to Provide Medical Treatment (GAUTREAUX)

59.

Under Louisiana law, GAUTREAUX, as Sheriff and the confining authority, has a legal duty to provide medical treatment for prisoners.

60.

GAUTREAUX failed to provide medical and mental health treatment within EBRPP that was adequate and reasonable as required by law.

21

61.

Mr. Johnson's death was a direct result of GAUTREAUX's failure to provide adequate

and reasonable medical and mental health care.

## V.    INJURIES

As a result of the actions of the defendants as described above, damages have been incurred

as follows:

    a.    Lamar Johnson (deceased) suffered conscious and severe physical, mental, and emotional distress, pain and suffering prior to his death, and lost his life.

    b.    Adrienne Lewis, on behalf of the minor child Liyah Johnson, who is the daughter of Lamar Johnson, suffered emotional pain and suffering, past, present, and future; loss of support; and has suffered the loss of love, affection, and companionship of her father, Lamar Johnson, and has incurred funeral and burial expenses.

## VI.    PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that after due proceedings there be judgment rendered

herein in plaintiffs' favor and against all defendants individually and jointly, as follows:

1.    Compensatory and punitive damages as prayed for herein;

2.    Reasonable attorneys' fees, as provided in 42 U.S.C. § 1988, 42 U.S.C. § 12205, and 29 U.S.C. § 794(b) and all costs of these proceedings and legal interest;

3.    Punitive damages pursuant to 42 U.S.C. § 1983 and any other applicable statute;

4.    Relief under La. C.C. arts. 2315 and 2321 from the intentional and/or negligent acts and/or omissions of the Defendants herein; and

5.    All other relief as appears just and proper to this Honorable Court.

{Signatures appear on following page.}

RESPECTFULLY SUBMITTED, this 26th day of May, 2016.

S. WESLEY WOOLF, P.C.

/s/ *David J. Utter*
DAVID J. UTTER
Louisiana Bar Number: 23236
*Lead Attorney for Plaintiff*

408 East Bay Street
Savannah, Georgia 31401
(912) 201-3696 Telephone
(912) 236-1884 Facsimile
utter@woolflawfirm.net

THE CLAIBORNE FIRM, P.C.

/s/ *William R. Claiborne*
WILLIAM R. CLAIBORNE
Georgia Bar Number: 126363
*Pro Hac Vice Motion Forthcoming*
*Attorney for Plaintiff*

410 East Bay Street
Savannah, Georgia 31401
(912) 236-9559 Telephone
(912) 236-1884 Facsimile
will@claibornefirm.com