UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ADRIENNE LEWIS, by and on behalf of the minor child LIYAH ALEXANDRIA JOHNSON,** | **CIVIL ACTION:  3:16-CV-352-SDD-SCR** |
| **VERSUS** | **JUDGE JOHN W. deGRAVELLES** |
| **EAST BATON ROUGE PARISH; SHERIFF SID J. GAUTREAUX, III, ET AL** | **MAGISTRATE JUDGE RICHARD L. BOURGEOIS, JR.** |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

MAY IT PLEASE THE COURT:

Defendants, Sheriff Sid J. Gautreaux, III, in his individual and official capacity as Sheriff of East Baton Rouge Parish ("Sheriff Gautreaux"),  and Lieutenant Colonel Dennis Grimes, in his individual and official capacity as Warden of the East Baton Rouge Parish Prison ("Warden Grimes"), Lieutenant Michael Duplessis, Deputy Avery Kujawa, Deputy Dalton Canezaro, and Corporal Cedric Buckner ("Individual Deputies") (sometimes collectively referred to herein as "Sheriff Defendants") move this Honorable Court to dismiss the claims asserted by Plaintiff, Adrienne Lewis, by and on behalf of the minor child Liyah Alexandria Johnson against them pursuant to the Federal Rules of Civil Procedure, more particularly, Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

    **I.**        **INTRODUCTION**

On May 26, 2016 Plaintiff filed her Complaint in this Honorable Court asserting claims under 42 U.S.C. § 1983 and state law arising out of the suicide of Lamar Johnson while he was an inmate at the East Baton Rouge Parish Prison ("EBRPP").[1] Plaintiff alleges that upon

---

[1] Rec. Doc. 1

1

information and belief Mr. Johnson ingested "mojo" or synthetic marijuana while he was housed at the EBRPP.[2] Plaintiff alleges that Mr. Johnson had a severe reaction to mojo, suffering from paranoid delusions and talking to himself.[3] Plaintiffs allege that Mr. Johnson's extreme emotional distress was apparent to anyone within sight and sound of him.[4] Plaintiff alleges that on May 30, 2015 Mr. Johnson was found hanging from his cell bars, that he was transported to the hospital where he died a few days later.[5]

Plaintiff asserts that she filed her complaint based on the defendants' alleged failure to protect Mr. Johnson from harm and deliberate indifference to his serious medical needs which allegedly resulted in his death.[6] Plaintiff also named as defendants, the Parish of East Baton Rouge, Emergency Medical Services ("EMS"), Chad Guillot as interim administrator of EMS, Prison Medical Services, ("PMS"), Rintha Simpson, as interim director of PMS, J. Does # 1-49 nurses employed by PMs and J. Does #50-99 employees of Sheriff Gautreaux and Warden Grimes. Plaintiff's claims against Sheriff Gautreaux and Warden Grimes are based on allegations of failure to supervise their employees at the EBRPP and as final policy makers at the EBRPP.[7] Plaintiff makes claims against Lt. Duplesses in his individual and official capacities as a supervisor of deputies assigned to posts at the EBRPP in locations where Mr. Johnson was housed.[8] Plaintiff makes claims against Deputy Kujawa, Deputy Canezaro and Corporal Buckner in their individual and official capacities as employees of EBRPP, based on the fact that they were allegedly assigned to posts at the EBRPP in locations where Mr. Johnson was housed and

---

[2] Rec. Doc. No. 1 page 8 paragraph 19
[3] Rec. Doc. 1 page 8 paragraph 20
[4] Rec. Doc. 1 page 8 paragraph 20
[5] Rec. Doc. 1 page 10 paragraph 26
[6] Rec. Doc. 1 pages 1 and 2
[7] Rec. Doc. 1 pages 3 and 4 paragraph 6
[8] Rec. Doc. 1 page 4 paragraph 7

where he allegedly "exhibited extreme emotional distress."[9] As is more fully set forth below, Plaintiff has failed to plead sufficient facts to support a claim against the Sheriff Defendants.

## II. LAW AND ARGUMENT

### A. Applicable Legal Standard

"Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege enough facts to state a claim to relief that is plausible on its face and fails to raise a right to relief above the speculative level."[10] "A legally sufficient complaint does not need to contain detailed factual allegations, but **it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action.**"[11] In order to avoid dismissal, for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations.[12]

A complaint fails to state a claim on which relief may be granted when the plaintiff does not plead enough facts to state a claim to relief that is plausible on its face.

The United States Supreme Court explained as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement" but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and entitlement to relief.[13]

The allegations against the Sheriff Defendants consists of nothing more than conclusory statements, legal conclusions and formulaic recitations of the elements of a cause of action, which are insufficient to state a cause of action against them. Pursuant to Fed. R. Civ. P.

---

[9] Rec. Doc. 1 page 4 paragraph 8
[10] *National Bi-Weekly Admin. Inc. v. Belo Corp.,* 512 F. 3d 137, 140 (5th Cir. 2007).
[11] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).
[12] *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards,* 667 F. 2d 1045 (5th Cir. 1982);
[13] *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

3

12(b)(6), plaintiff's claims should be dismissed for her failure to state a claim upon which relief can be granted.

### B. Plaintiff fails to state a claim against Lieutenant Duplessis, Deputy Kujawa, Deputy Canezaro and Coropral Buckner in their official capacities.

Plaintiff makes claims against the Individual Deputies in both their individual and official capacities.[14] "Municipal liability under 42 U.S.C. § 1983 requires proof of (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom."[15] The claims against Lieutenant Duplessis, Deputy Kujawa, Deputy Canezaro and Coropral Buckner in their official capacities must fail because they are not policymakers for East Baton Rouge Parish.[16] The sheriff is the chief law enforcement officer in the parish and is the final policymaker.[17] Plaintiff does not even allege that the Individual Deputies are policy makers.[18] Therefore, the official capacity claims against Lieutenant Duplessis, Deputy Kujawa, Deputy Canezaro and Coropral Buckner should be dismissed with prejudice.

### C. Defendants Lieutenant Duplessis, Deputy Kujawa, Deputy Canezaro and Coropral Buckner are entitled to qualified immunity.

Plaintiff claims that Defendants Lieutenant Duplessis, Deputy Kujawa, Deputy Canezaro and Coropral Buckner are liable in their individual capacities under § 1983 based on their alleged deliberate indifference to Mr. Johnson's right to appropriate medical and mental health care which allegedly resulted in his committing suicide in violation (presumably in violation of the Fourteenth Amendment).[19] Plaintiff also makes the conclusory allegation that the Individual

---

[14] Rec. Doc. 1 paragraphs 7 and 8
[15] *Davis v. Tarrant Cnty., Tex.,* 565 F.3d 214, 227 (5th Cir.2009).
[16] *See Club Retro, L.L.C. v. Hilton,* No. 07–193, 2008 WL 1901723, at *7 (W.D.La. Apr. 4, 2008), *rev'd in part on other grounds,* 568 F.3d 181 (5th Cir.2009); *Elphage v. Gautreaux*, 969 F. Supp. 2d 493, 512 (M.D. La. 2013).
[17] *Craig v. St. Martin Parish Sheriff,* 861 F.Supp. 1290, 1301 (W.d. La. 1994); La. Const. art. 5, §27.
[18] Rec. Doc. 1 paragraphs 7 and 8
[19] Rec. Doc. 1 page 15 paragraph 43

4

Defendants violated Mr. Johnson's right to be free from unreasonable searches and seizures, the right to due process and to equal protection of the laws as protected by the First, Fourth and Fourteenth Amendments and Article IV (Privileges and Immunities Clause).

Plaintiff makes absolutely no factual allegations conceivably in support of her claim that Mr. Johnson's right to be free from unreasonable searches and seizures, equal protection of the law or Article IV (Privileges and Immunities Clause) have been violated. Plaintiff alleges no facts that the Individual Defendants unlawfully searched or seized Lamar Johnson. Mr. Johnson was arrested by City of Baker Police.[20] Plaintiff does not allege that Mr. Johnson was discriminated against or that any such discrimination was the cause of his suicide. Thus any claim being made under the Equal Protection Clause should be dismissed. Plaintiff does not allege that Mr. Johnson's freedom of speech or religion was violated. Thus, Plaintiff's First Amendment claim should be dismissed. Finally Plaintiff does not allege that Mr. Johnson was an out-of-state citizen treated differently from citizens of Louisiana. Thus, Plaintiff has not made a claim under Article IV, the Privileges and Immunities Clause. Therefore, these claims should be dismissed. Plaintiff's claims are more appropriately analyzed under the Fourteenth Amendment prohibition against cruel and unusual punishment. However, Plaintiff does not allege sufficient facts to set forth a Fourteenth Amendment claim against the Individual Deputies, who are entitled to qualified immunity as set forth below.

Qualified immunity "protects government officials from 'liability for civil damages insofar as their conduct does not violate clearly established stator or constitutional rights of

---

[20] Rec. Doc. 1 page 7 paragraph 16

5

which a reasonable person would have known.'"[21] Thus, a public official is entitled to qualified immunity unless the plaintiff demonstrates that 1.) the defendant violated the plaintiff's constitutional rights and 2.) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation.[22] An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was " 'clearly established' " at the time of the challenged conduct. *Ashcroft v. al–Kidd,* 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011). And a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. *Id.,* at 2083–2084. In other words, "existing precedent must have placed the statutory or constitutional question" confronted by the official "beyond debate." *Id.* Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."[23] Qualified immunity questions should be resolved at the earliest possible stage in litigation.[24] Plaintiff's complaint must set forth sufficient facts to overcome qualified immunity.[25]

Plaintiff has not alleged sufficient facts to show that Individual Deputies violated a clearly established constitutional right of Lamar Johnson. In the context of protecting a pretrial detainee from self-inflicted harm, defendants will only be liable under Section 1983 if they had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference. It is the failure to provide pre-trial detainees with adequate protection from their *known* suicidal impulses that is actionable under Section 1983. *Evans v.*

---

[21] *Pearson v. Callahan,* 555 U.S. 223, 231, 1129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800,818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).
[22] *Porter v. Epps,* 659 F. 3d 440 (2011).
[23] *Mendenhall v. Riser,* 213 F. 3d 226, 230 (5th Cir. 2000).
[24] *Pearson v. Callahan,* 555 U.S. 223, 232, 129 S. Ct. 808, 172 L. Ed.2d 565 (2009).
[25] *Iqbal; Ashcroft v. al-Kidd,* 131 S. Ct. 2074 (2011).

*City of Marlin,* 986 F. 2d 104, 107 (5th Cir. 1993). In inmate suicide cases, the defendant must be aware of a substantial and significant risk that the inmate will commit suicide and effectively disregard it. *Jacobs v. W. Feliciana Sheriff's Dep't,* 228 F. 3d 388, 395 (5th Cir. 2000). Although the law is clearly established that jailers must take measures to prevent inmate suicides *once they know of the suicide risk,* the law is not established with any clarity as to what those measures must be. *Id.*

In *Taylor v. Barkes,* 135 S. Ct. 2042 (2015), the plaintiff alleged that the Commissioner of the Delaware Department of Corrections and the Warden of the prison violated the constitutional rights of an inmate who committed suicide in prison by failing to supervise and monitor the private contractor that provided medical treatment. The United States Supreme Court held that there was no clearly established right at the time of an incarcerated person to proper implementation of adequate suicide prevention goals, such that the officials were qualifiedly immune from claim by widow of deceased inmate that they violated the inmate's Eighth Amendment rights in failing to prevent his suicide. *Id* at page 2045. The Supreme Court in *Taylor* cited the Fifth Circuit's decision in *Burns v. Galveston,* 905 F. 2d 100, 104 (5th Cir. 1990) as "rejecting the proposition that 'the right of detainees to adequate medical care includes an absolute right to psychological screening.'"

It is well-settled that negligent inaction by a jail officer does not violate the due process rights of a person lawfully held in custody.[26] To be considered deliberately indifferent to a known suicide risk, an officer's acts must constitute at least more than a mere oversight. Plaintiffs must establish that the officers were aware of a substantial and significant risk that the

---

[26] *Jacob v. West Feliciana Sheriff's Dep't,* 228 F. 3d 388, 394 (5th Cir. 2000).

7

pretrial detainee might kill herself, but effectively disregarded it.[27]  See *Flores v. Cty. of Hardeman,* 124 F. 3d 736, 738-39 (5th Cir. 1997)(finding sheriff did not act with subjective deliberate indifference because during the twelve hours prior to committing suicide, the inmate did not hint to anyone with whom he talked (jailers, an inmate, his father, judge) that he was contemplating suicide); *Yellow Horse v. Pennington County,* 225 F. 3d 923 (8th Cir. 2000) (The officer on duty at the time of inmate's suicide was entitled to qualified immunity. The officer was not deliberately indifferent for failing to make more timely cell checks upon learning from other inmates that the inmate was upset and talking about "heaven" and "hell".)

In this case, Plaintiff alleges that after ingesting mojo (synthetic marijuana), Lamar Johnson suffered paranoid delusions and began talking out loud to himself and that his extreme emotional distress was apparent.[28] Plaintiff alleges that upon information and belief, Buckner, Kujawa, Canezaro and J. Does #1-99 witnessed Mr. Johnson's extreme emotional distress and "suicidal ideation" and chose to ignore his condition.[29]  Despite Plaintiff's conclusory allegation that these defendants witnessed Mr. Johnson's "suicidal ideation",  Plaintiff does not allege any specific facts that Mr. Johnson told anyone at the EBRPP that he had thoughts of suicide or showed any signs that he might commit suicide.  Allegations of merely talking out loud to oneself and showing signs of emotional distress are not sufficient to show that any Sheriff Defendant knew that there was a substantial and significant risk that Lamar Johnson would commit suicide and effectively disregarded it.

Plaintiff does not even make the conclusory allegation that Lieutenant Duplessis witnessed Mr. Johnson's emotional "suicidal ideation." Rather, Plaintiff alleges that Duplesses

---

[27] *Id,* 228 F. 3d at 395
[28] Rec. Doc. 1 page 8 paragraph 20
[29] Rec. Doc. 1 page 9 paragraph 22

8

was assigned as supervisor to posts at the EBRPP in locations where Mr. Johnson was housed and that Duplesis approved a report completed by Buckner which Plaintiff alleges failed to accurately reflect Mr. Johnson's emotional distress.[30] These allegations are not sufficient to show that Duplesis was aware of a substantial and significant risk that Mr. Johnson would commit suicide and effectively disregarded it.

Thus, Plaintiff has not alleged sufficient facts to show that the Individual Defendants violated any constitutional right of Mr. Johnson, much less a clearly established one.. A reasonable official in the Individual Deputies' shoes would not have understood that he was violating Mr. Johnson's constitutional right to be protected from self-harm when Mr. Johnson did not tell anyone at the EBRPP that he was contemplating committing suicide.  Thus, the Individual Deputies are entitled to qualified immunity.

### D. The Plaintiff has failed to state a claim against Sheriff Gautreaux or Warden Grimes under Section 1983 in their Individual or Official Capacity for failure to supervise.

Plaintiff alleges that Sheriff Gautreaux and Warden Grimes in their individual and official capacities failed to supervise their subordinates, Lt. Duplessis, Deputy Kujawa, Deputy Canezaro, Corporal Buckner and John Does #50-99 to ensure inmates received appropriate care for serious medical needs.[31] Plaintiff does not allege that either Sheriff Gautreaux or Warden Grimes had any knowledge of, or participated in the events surrounding Mr. Johnson's detention.

---

[30] Rec. Doc. 1 page4 paragraph 7 and page 8 and 9 paragraph  21
[31] Rec. Doc. 1 page 14 and 15 paragraph 41.

Sheriff Gautreaux and Warden Grimes can only be liable in their capacity as a supervisor of the jail for their own unconstitutional conduct.[32] A supervisor may not be held liable under § 1983 on any theory of vicarious liability.[33] Rather, to be liable under § 1983, a supervisory official must be personally involved in the constitutional deprivation, or there must be a sufficient causal connection between the supervisor's alleged wrongful conduct and the constitutional violation. *Thompkins v. Belt,* 828 F.2d 298, 303–04 (5th Cir.1987).

With the exception of the application of qualified immunity, the legal elements of an individual's supervisory liability and a political subdivision's liability for failure to train and/or supervise are similar enough such that the same analyses applies to both individual and official capacity claims.[34]

A supervisory official not personally involved in the alleged constitutional violation may be liable under a failure to train or supervise theory under § 1983 if: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."[35]

Deliberate indifference is a stringent standard of fault requiring proof that a supervisor "disregarded a known or obvious consequence of his action"; a showing of negligence or even gross negligence will not suffice. *Estate of Davis,* 406 F.3d at 381. Deliberate indifference implies the official's actual knowledge of facts showing that a risk of serious harm exists as well

---

[32] *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).

[33] *Estate of Davis v. City of N. Richland Hills,* 406 F.3d 375, 381 (5th Cir.2005); *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).

[34] *Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 452–54 and fn.7–8 (5th Cir.1994) (*en banc* ); *Roberts v. City of Shreveport,* 397 F. 3d 287 (5th Cir. 2005); *Lively v. Theriot,* No. CIV.A. 6:13-2756, 2015 WL 3952159, at *9 (W.D. La. June 29, 2015).

[35] *Estate of Davis, 406 F.3d at 381; Thompson v. Upshur County,* 245 F.3d 447, 459 (5th Cir.2001); *Brown v. Callahan,* 623 F.3d 249, 254 and fn. 1 (5th Cir.2010); *Vicknair,* 2013 WL 1180834 at *17 *citing Thompson, supra*., *Roberts v. City of Shreveport,* 397 F.3d 287, 292 (5th Cir.2005) and *Mesa v. Prejean,* 543 F.3d 264, 274 (5th Cir.2008).

as the official's having actually drawn that inference.[36] Moreover, "[p]roof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Thompson,* 245 F.3d at 459; *Mesa,* 543 F.3d at 274; *Brumfield,* 551 F.3d at 329 *citing Burge v. St. Tammany Parish,* 336 F.3d 363, 370 (5th Cir.2003) *quoting Thompson,* 245 F.3d at 459; *Brown,* 623 F.3d at 253 *citing Estate of Davis,* 406 F.3d at 381.

Further, in order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor acted, or failed to act, with deliberate indifference *to violations of others' constitutional rights committed by their subordinates. Doe v. Taylor ISD,* 15 F.3d 443, 454 (5th Cir.1994) (en banc) (supervisor's deliberate indifference to subordinate's wrongdoing must have "caused a constitutional injury to the" plaintiff). Thus, in this case, if this Court were to find that Plaintiff has failed to allege sufficient facts to show that any constitutional violations were committed by subordinates of Sheriff Gautreaux or Warden Grimes (prison employees), then the Plaintiff's failure to supervise claims likewise, fail and should be dismissed for this reason.

Further, Plaintiff has failed to allege any facts to satisfy the elements of a cognizable supervisory liability claim, but instead relies upon conclusory statements insufficient to state a valid claim. *See Ashcroft,* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") The law in this area is clear that a plaintiff must point with some specificity to an inadequacy in the supervision decisions.[37]

Plaintiff makes the conclusory allegation that Sheriff Gautreaux and Warden Grimes failed to supervise their subordinates, Lt. Duplessis, Deputy Kujawa, Deputy Canezaro, Corporal

---

[36] *Smith v. Brenoettsy,* 158 F. 3d 908, 912 (5th Cir. 1988).
[37] *Speck v. Wiginton,* 606 Fed. Appx. 733 (5th Cir. 2015).

Buckner and John Does #50-99 to ensure that they did not ignore prisoner's requests for medical and/or mental health treatment, failure to refer prisoners needing treatment to appropriate mental health professionals, and/or fail to properly monitor prisoners' who report suicidal ideation or show signs of mental health crisis.[38] Plaintiff makes the conclusory, formulaic recitations of the elements of a cause of action that Sheriff Gautreaux and Warden Grimes were aware of the need to supervise their subordinates in order to ensure that they did not violate prisoners' rights but that they ignored that need and acted with deliberate indifference and disregarded the safety of Lamar Johnson.[39] Plaintiff fails to allege specifically how Warden Grimes and Sheriff Gautreaux's supervision of employees was defective. Further, the Plaintiff has not alleged sufficient facts to show deliberate indifference on the part of either Sheriff Gautreaux or Warden Grimes. Plaintiff does not allege that either Sheriff Gautreaux or Warden Grimes was aware that any guard had ignored a prisoner's request for medical and/or mental health treatment, had failed to refer prisoners needing treatment to appropriate mental health professionals, and/or had failed to properly monitor prisoners' who report suicidal ideation or show signs of mental health crisis. The Plaintiff has not alleged a pattern of similar violations or that the inadequacy of the supervision is obvious and obviously likely to result in a constitutional violation. Plaintiff has not alleged facts that Sheriff Gautreaux or Warden Grimes ignored a known or obvious risk that resulted in Lamar Johnson's suicide. Instead, Plaintiff alleges generally that the "failures of all defendants are well known and consistent with a pattern and practice resulting in a decrepit physical plant, rampart violence, and deliberate indifference to the serious medical and mental health care needs of prisoners at EBRPP and Plaintiff then purportedly gives five "examples."[40]

---

[38] Rec. Doc. 1 page 14 paragraph 41
[39] Rec. Doc. 1 page s 14 and 15 paragraph 41.
[40] Rec. Doc. 1 page 12 paragraph 33

For instance, Plaintiff alleges that since 2013 at least four people died at the jail due to inadequate medical and mental health care. However, Plaintiff does not allege and will not be able to show that any of these deaths were the result of the inmate committing self-harm or that they were the result of Sheriff Gautreax or Warden Grimes's failure to supervise. These "examples" do not support a pattern of similar violations that reflect deficiencies in supervision that are so clearly inadequate as to be obviously likely to result in the alleged constitutional violation in this case, the failure to protect Mr. Johnson from self-harm.

Sheriff Gautreaux and Warden Grimes are also entitled to qualified immunity as to the claims against them for failure to supervise in their individual capacities. Qualified immunity "protects government officials from 'liability for civil damages insofar as their conduct does not violate clearly established stator or constitutional rights of which a reasonable person would have known.'" [41] Thus, a public official is entitled to qualified immunity unless the plaintiff demonstrates that 1.) the defendant violated the plaintiff's constitutional rights and 2.) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation.[42] Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."[43] Qualified immunity questions should be resolved at the earliest possible stage in litigation.[44] Plaintiff's complaint must set forth sufficient facts to overcome qualified immunity.[45]

Plaintiff in this case has failed to allege facts to suggest that Sheriff Gautreaux and Warden Grimes' conduct in supervising prison employees was objectively unreasonable in light

---

[41] *Pearson v. Callahan,* 555 U.S. 223, 231, 1129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800,818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).
[42] *Porter v. Epps,* 659 F. 3d 440 (2011).
[43] *Mendenhall v. Riser,* 213 F. 3d 226, 230 (5th Cir. 2000).
[44] *Pearson v. Callahan,* 555 U.S. 223, 232, 129 S. Ct. 808, 172 L. Ed.2d 565 (2009).
[45] *Iqbal; Ashcroft v. al-Kidd,* 131 S. Ct. 2074 (2011).

of clearly established law at the time of the violation. Thus, Plaintiff's failure to supervise claims should be dismissed with prejudice.

### E. Plaintiff has failed to state a claim against Sheriff Gautreaux and Warden Grimes in their Official Capacities

Plaintiff has failed to state a claim against Sheriff Gautreaux and Warden Grimes in their official capacities for failing to protect Lamar Johnson from committing suicide. Plaintiff asserts this official capacity claim against Sheriff Gautreaux and Warden Grimes as a "condition of confinement claim."[46] However, it is clear that under Fifth Circuit jurisprudence, that an inmate suicide case is an "episodic act or omissions" case rather than a "conditions of confinement" case. *See Flores v. County of Hardeman, Texas,* 124 F.3d 736, 738 (5th Cir.1997). The reported cases of the Fifth Circuit uniformly hold that inmate suicides involve "episodic acts or omissions" claims. See *Hetchler v. Rockwall Cty. Texas*, No. 3:08-CV-0551-B, 2009 WL 1160284, at *4 (N.D. Tex. Apr. 27, 2009).

Thus, this Court must first decide whether the Individual Deputies violated Mr. Johnson's constitutional rights. This Court must determine whether the Individual Deputies had actual knowledge of the substantial risk of suicide by Mr. Johnson and responded with deliberate indifference. Only if this Court determines that the Individual Deputies violated Mr. Johnson's constitutional rights, will this Court need to consider whether Sheriff Gautreaux and/or Warden Grimes are liable in their official capacities for that violation, because the Individual Deputies acted in accordance with an official policy or custom of the Sheriff's Office. See *Flores* page 738. To establish municipal or official capacity liability under Section 1983 in the context of a 14th Amendment claim that an officer failed to protect a pretrial detainee from self-harm, liability will attach to the municipality or officer in his official capacity only if, in addition to the officer's

---
[46] Rec. Doc. 1 Count 6 paragraphs 50-52

subjective deliberate indifference, the municipality adopted or maintained a policy or custom with objective deliberate indifference to the detainee's constitutional rights. *Olabisiomotosho v. City of Houston,* 185 F. 3d 521, 526 (5th Cir. 1999).

In other words, the plaintiff must first show that a municipal employee committed a constitutional violation-here deliberate indifference to a known suicide risk. Once this underlying constitutional violation is established, liability can be extended to the municipality if plaintiffs can show that the violation resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference.[47] The plaintiff must show that the municipal policymaker actually knew or should have known of the risk of serious harm. See *Lawson v. Dallas Cnty.,* 286 F. 3d 257, 264 (5th Cir. 2002).

As set forth above, Plaintiff has failed to allege sufficient facts to support a claim that the Individual Deputies had actual knowledge of the substantial risk of suicide and responded with deliberate indifference. However, even if this Court were to find that Plaintiff has alleged sufficient facts to set forth a claim for constitutional violation by the Individual Deputies, Plaintiff has not alleged sufficient facts to show that an unconstitutional policy or custom of Sheriff Gautreaux or Warden Grimes, which they knew or should have known would result in the risk of inmate suicide was the moving force behind Mr. Johnson's suicide.

Because *respondeat superior* or vicarious liability will not attach under Section 1983, Sheriff Gautreaux and Warden Grimes cannot be liable in their official capacity for the alleged actions of the Individual Deputies.[48] In order to have an official capacity claim under Section 1983 the plaintiff must identify an unconstitutional municipal policy or custom that caused the

---

[47] *Scott v. Moore,* 114 F. 3d 51 (5th Cir. 1997)(en banc).
[48] *City of Canton v. Harris,* 489 U.s. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)

deprivation of his/her constitutional rights.[49] The plaintiff must show three elements (1) an official policy, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Pineda v. City of Houston,* 291 F. 3d 325, 328 (5th Cir. 2002) citing *Piotrowski v. City of Houston,* 237 F. 3d. 567, 578 (5th Cir. 2001).

An "official policy" may be either a "policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers *or* a persistent, widespread practice ... which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Houston,* 735 F.2d 838, 842 (*citing Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir.1984)). "Isolated acts" generally cannot establish the existence of a custom or practice.[50] A single incident can give rise to municipal liability only if the municipal actor who committed the constitutional violation "is a final policymaker." *Id.* at 542.[51] A pattern is tantamount official policy when it is "so common and well-settled as to constitute a custom that fairly represents municipal policy."[52] Where prior incidents are used to prove a pattern, they "mush have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." [53] A pattern requires similarity and specificity;

---

[49] *Monell v. Dep't of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *Parm v. Shumate,* 513 F. 3d 135, 142 (5th Cir. 2007), cert denied, 129 S.Ct. 42, 172 L.Ed.2d 21 (2008). *Colle v. Brazos County Texas,* 981 F.2d 245 (5th Cir. 1993).
[50] *Burge v. St. Tammany Parish,* 336 F. 3d 363, 370 (5th Cir. 2003).
[51] *Medina v. Ortiz,* 6223 F. Appx. 695, 700 (5th Cir. 2015)
[52] *Webster v. City of Houston,* 735 F. 2d 838, 841 (5th Cir. 1984)(en banc)
[53] *Id at 842*

16

'[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question."[54]

"The description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City, Police Dep't,* 130 F.3d 162, 167 (5th Cir.1997) (citing *Fraire v. Arlington,* 957 F.2d 1268, 1277 (5th Cir.1992)). A plaintiff must demonstrate that the municipal policymaker had actual or constructive knowledge of the custom. *Pineda v. City of Houston,* 291 F. 3d 325, 329 (5th Cir. 2002). A pattern also requires "sufficiently numerous prior incidents."[55]

In this case, Plaintiff does not identify any specific official unconstitutional policy. Instead, Plaintiff only vaguely alleges that the defendants established policies and practices (what policies and practices?) that they knew would deprive prisoners with serious medical conditions, namely mental health disorders, of treatment for those disorders and coordinated with Emergency Medical Services("EMS") and Prison Medical Services to provide inadequate services for medical and mental health care.[56] This allegation does not identify a specific unconstitutional policy and is based on the incorrect assumption that Sheriff Gautreaux has a contract with and/or has control over EMS or PMS's policies. See See La. R.S. 15:703; *Amiss v. Dumas,* 411 So. 2d 1137 (La. 1st Cir. 1982).

Further, Plaintiff also makes the conclusory allegation that Sheriff Gautreaux, the Parish and EMS established policies, patterns or practices that they knew would deprive prisoner with serious mental health disorders, of treatment of those disorders.[57] Further, Plaintiff's official

---

[54] *Estate of Davis ex rel McCully v. City of North Richland Hills,* 406 F. 3d 375, 383 (5th Cir. 2005).
[55] *McConney v. City of Houston,* 863 F. 2d 1180, 1184 (5th Cir. 1989)
[56] Rec. Doc. 1 paragraphs 39 and 41
[57] Rec. Doc. 1 paragraph 44

17

capacity claim is based on alleged *de facto* policies. Plaintiff alleges that such policies and practices include: racial segregation of prisoner living areas, defects in physical design and manner of operation, including inadequate staffing, inadequate supervision techniques, poor sightlines, and inadequate monitoring of prisoner living areas.[58]

Plaintiff has not alleged a pattern of prior incidents of suicides resulting from these alleged "de facto" policies and practices to establish a de facto policy, custom or practice. Further, Plaintiff does not explain how these alleged deficiencies were the moving force behind any constitutional violation against Johnson, much less that these alleged deficiencies caused Johnson to commit suicide. Finally, Sheriff Gautreaux and Warden Grimes cannot be liable for any alleged defects in the physical design of the EBRPP including poor sightlines because the City/Parish is responsible for providing and maintaining the physical facility of the jail.[59]

Further, Plaintiff has not alleged sufficient facts to show that the violation of Mr. Johnson's rights to be kept free from self-harm resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference or that the Sheriff or Warden actually knew or should have known of the risk of harm to suicidal inmates. Plaintiff has not alleged that the Individual Deputies violated his constitutional rights or that any such violation resulted from a municipal policy or custom adopted or maintained with deliberative indifference by Sheriff Gautreaux or Warden Grimes. Plaintiffs' official capacity claims against Sheriff Gautreaux and Warden Grimes should be dismissed with prejudice.

### F. Plaintiff is not entitled to recover punitive damages against the Sheriff Defendants in their Official Capacities

---

[58] Rec. Doc. 1 paragraph 48
[59] *Amiss v. Dumas,* 411 So. 2d 1137 (1st Cir. 1982); La. R.15:702 and La. R.S. 33:4715

It is well established that §1983 does not allow for recovery of punitive damages against a governmental agency. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 246, 271 (1981); *Pemberton v. West Feliciana Parish School Bd.*, 2010 WL 431572, at *7 (M.D. La. Feb. 3, 2010). Accordingly, Plaintiff cannot recover punitive damages against the Sheriff Defendants in their official capacities and any such claims should be dismissed.

### G. State law claims should be dismissed

Plaintiff alleges state law claims against Defendants, Lieutenant Duplessis, Deputy Kujawa, Deputy Canezaro and Coropral Buckner for allegedly acting intentionally, maliciously, recklessly and/or negligently towards Mr. Johnson. Further, Plaintiff alleges that Sheriff Gautreaux is liable under state law under the doctrine of *respondeat superior.*[60]

Under Louisiana law, while prison authorities owe a duty to use reasonable care to protect inmates from harm and this duty extends to protecting inmates from self-inflicted injury, the duty is not absolute, but depends upon the circumstances of the particular case.[61] The First Circuit in *Misenheimer* found that the trial court did not err in finding the risk of suicide not encompassed in the duty owed by the defendants in that case. The Court explained: "Given the fact that no one at the jail was or should have been aware of his suicidal intentions and that Mr. Misenheimer's act was one of deliberately inflicting harm upon himself, this act was neither foreseeable nor easily associated with any duty that was allegedly breached." *Id* at page 161.

In the case at hand, Plaintiff has not alleged sufficient facts to show that either Sheriff Gautreaux or his employees knew or should have been aware of Mr. Johnson's suicidal intentions and since Mr. Johnson's act was one of deliberately inflicting harm on himself, this act was not within any duty owed to Mr. Johnson. Therefore, the Individual Deputies cannot be

---

[60] Rec. Doc. 1 paragraphs 53 and 54
[61] *Scott v. State,* 618 So. 2d 1053 (La. App. 1st Cir. 1993), *writ denied,* 620 So. 2d 881 (La. 1993); *Misenheimer v. West Baton Rouge Parish Sheriff's Office,* 677 So. 2d 159 (1st Cir. 1996)

liable under state law and Sheriff Gautreaux cannot be liable under the doctrine of *respondeat superior.*

### III.  CONCLUSION

For the foregoing reasons, defendants, Sheriff Sid J. Gautreaux, III, Lt. Col. Dennis Grimes, Lieutenant Michael Duplessis, Deputy Avery Kujawa, Deputy Dalton Canezaro, and Corporal Cedric Buckner request that this motion be granted and all causes of action asserted against them be dismissed, with prejudice.

Respectfully submitted:

**ERLINGSON BANKS, PLLC**

*s/Catherine S. St. Pierre*_____
MARY G. ERLINGSON (#19562)
CATHERINE S. ST. PIERRE (#18419)
TARA L. JOHNSTON (#28100)
One American Place
301 Main Street, Suite 2110
Baton Rouge, Louisiana 70801
Telephone:  (225) 218-4446
Facsimile: (225) 246-2876

### CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2016, a copy of the foregoing Memorandum in Support of Motion to Dismiss was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the court's electronic filing system to counsel of record.

Baton Rouge, Louisiana, this 2nd day of September, 2016.

*s/ Catherine St. Pierre*_____
Catherine St. Pierre