**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| ADRIENNE LEWIS, by and on behalf of the minor child LIYAH ALEXANDRIA JOHNSON, | * * * | C/A No.: 3:16-cv-352-JWD-RLB |
| Plaintiffs, | * * | JUDGE John W. deGravelles |
| VERSUS | * * | |
| EAST BATON ROUGE PARISH; et al. | * * | MAGISTRATE JUDGE Richard L. Bourgeois, Jr |
| Defendants. | * * * | |
| ****************************** | * | |

**MEMORANDUM IN SUPPORT OF MOTION TO DEFER OR DENY MOTION FOR SUMMARY JUDGMENT PENDING DISCOVERY**

MAY IT PLEASE THE COURT:

Plaintiff, Adrienne Lewis, by and on behalf of the minor child Liyah Alexandria Johnson, moves this Honorable Court to defer or deny the pending Motion for Summary Judgment ("Motion") filed by Defendant City of Baton Rouge/Parish of East Baton Rouge ("City/Parish") pending discovery in this matter.

**INTRODUCTION**

On May 26, 2015, Lamar Johnson ("Mr. Johnson") entered the East Baton Rouge Parish Prison ("EBRPP") after being detained during a routine traffic stop for tinted windows. He was arrested based on a hold by Jefferson Parish for a non-violent charge that was four years old. Four days later, on May 30, Mr. Johnson left EBRPP on a stretcher after he was found hanging from his cell bars. He died a few days later at a local hospital.[1]

[1] Rec Doc 27

Without the benefit of any discovery, Plaintiff has raised a number of factual disputes. Sworn declarations from individuals incarcerated with Mr. Johnson report that Mr. Johnson died only after EBRPP guards assaulted him, created conditions that provided access to deadly synthetic marijuana, placed him in a violent and racially segregated congregate living area and failed to protect him, ignored his obvious emotional distress and claims of not wanting to live, arbitrarily moved him to filthy, loud, unmonitored individual cells, ignored him as he hanged from a cell bar, and falsified official EBRPP logbooks to claim they made regular rounds and "all seems secure."[2] A number of the statements note that the isolation cell block where Mr. Johnson ultimately hung himself was full of detainees with severe mental health issues.[3] The allegations paint a picture of a complete denial of mental health care for vulnerable detainees, including Mr. Johnson.

In addition, Plaintiff provides support for her allegations that the denial of mental health care to detainees at EBRPP was known to the Defendant City/Parish. Plaintiff has previously cited a public report quoting a recent independent evaluation by Health Management Associates (HMA) of the system calling the health care provided to prisoners at EBRPP "episodic and inconsistent."[4] After an overview and assessment of the medical operations at EBRPP, and comparing the operations to national standards, HMA acknowledged what Plaintiff alleges, namely that the health care system at EBRPP was grossly understaffed. For example, the report estimates that, based on medical "chart audits, provider staffing and current productivity

[2] Rec Doc 38-3 and Rec Doc 38-6

[3] Rec Doc 38-3 at pp. 4-5, 10-15, 17-18.

[4] Rec Doc 38-4

compared to other jail systems", the physician position fills only 36% "of actual need" and the psychiatric provider fills only 61% percent "of actual need."[5]

Finally, HMA identified a number of findings directly related to Plaintiff's allegations against the Defendant City/Parish and its "defenses." First and foremost, HMA noted access to health care concerns because detainees requesting health care at EBRPP had to go through security. This gatekeeper function led to requests for health care at 16% to 33% of national rates based on the number of individuals detained at EBRPP.[6]

HMA noted that there was "[n]o identifiable process to identify [detainees] who missed initial screening" and "screens may not be completed until 24 – 36+ hours after entering the facility."[7] The result was "episodic and inconsistent" health care, and as an example, one report for "May of 2016 showed 646 inmates were released without *any record of medical care* and the average number of days they were incarcerated was 80 days."[8]

HMA assessed the health care services provided by the Defendant City/Parish in early 2016. Although Plaintiff's allegations relate to 6-12 months prior to HMA's work, there is nothing in the public record to indicate that mental health services were better when Mr. Johnson was in EBRPP. For example, one media reported noted that since 2013, at least four people died in EBRPP due to inadequate medical and mental health care.[9] One elected official complained

---

[5] *See*, Exh. A, p. 12 (Health Management Associates "Report and Recommendations Clinical Operations at East Baton Rouge Parish Prison," dated June 8, 2016). Plaintiff received this document, as most of the other evidence to support her case, via a public records request.

[6] Id. at p. 17.

[7] Id. at p. 16.

[8] Id. at p. 24 (emphasis added).

[9] http://www.theadvocate.com/baton_rouge/news/crime_police/article_5375899e-1afd-5a0b-b678-651801c96146.html

when the parish council hired HMA, noting that "the council already knows about numerous problems" including understaffing, medical equipment shortages, and insufficient compensation for medical professionals.[10]

Plaintiff obviously sues the Defendant City/Parish in its official capacity only.[11] Plaintiff alleges that Defendant City/Parish's policy, practices, or customs caused Mr. Johnson's death and the Plaintiff's harm. With only the benefit of independent investigation and public records act requests, Plaintiff has shown more than a plausible basis that discovery will yield facts that will influence the pending summary judgment motion. Plaintiff should be permitted to conduct discovery in this matter.

## II. Law and Argument

### a. Legal Standard for Rule 56(d) Motions

"Rule 56(d) motions for additional discovery are broadly favored and should be liberally granted because the rule is designed to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." *American Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (internal quotations and citations omitted). Summary judgment should not be granted before discovery is complete, especially where, as here, Plaintiff is "not seeking additional discovery, but discovery at all." *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 354 (5th Cir. 1989) (citations omitted). While it is true that Plaintiff has the burden of showing why additional discovery is necessary, if no discovery has yet taken place, "the party making the Rule 56(f) motion cannot be expected to frame its motion with great specificity as to

[10] https://www.businessreport.com/article/councilwoman-says-contract-review-medical-services-parish-prison-waste-money

[11] Rec Doc 27 at pp. 16-19, 21-22

the kind of discovery likely to turn up useful information, as the ground for such specificity has not been laid." *Khan v. American Intern. Group, Inc.*, 654 F.Supp.2d 617, 624-25 (S.D. Tx 2009) (citations omitted).[12] As the Court in *Kahn* noted, "[t]he Fifth Circuit has held it to be an abuse of discretion not to grant a Rule 56(f) motion if the discovery opportunity has clearly been inadequate." *Id.* at 625.

**b. The Constitutional Protections Afforded Mr. Johnson**

For decades, the clearly established law in our circuit has imposed a duty upon governmental officials to, *inter alia*, provide medical care and protection from harm to incarcerated individuals. "The underlying purpose of requiring a state jail official to provide medical care to a pretrial detainee is to prevent the detainee from suffering further physical pain or harm." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644 (5th[th] Cir. 1996). As the *en banc* court in *Hare* noted, "the State's obligation to prevent suicide may implicate a kaleidoscope of related duties, including a duty to provide not only medical care, but also protection from self-inflicted harm." *Id.*

Plaintiff challenges the unconstitutional treatment of Mr. Johnson under both a "conditions of confinement" theory and an "episodic act or omission" by specific EBRR officials theory. *See, e.g., Estate of Henson v. Wichita County, Tex.*, 795 F.3d 456, 462-464 (5[th] Cir. 2015) ("Significantly, there is no rule barring plaintiff from pleading both alternative theories, and a court may properly evaluate each separately."). Even without the benefit of discovery, Plaintiff has provided evidence that conditions-of-confinement in EBRPP are patently unconstitutional and a threat to the health and safety of all of its prisoners, including Mr.

---

[12] Effective December 1, 2010, Rule 56(f) was reclassified as Rule 56(d) with no substantial change. *See* Fed. R. Civ. P. 56 Advisory Committee Notes to the 2010 amendments.

Johnson.[13] The conditions "reflect an unstated or de facto policy, as evidenced by a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice.'" *Shepherd v. Dallas County*, 591 F.3d 445, 4524 (5th Cir. 2009) (quoting *Hare v. City of Corinth, Miss.*, 74 F.3d 633 at 645). Because Defendant City/Parish's unstated or de facto policy of denying constitutionally adequate medical and mental health care was "not reasonably related to a legitimate governmental objective, and . . . violated [Mr. Johnson's] . . . constitutional rights", *Edler v. Hockley County Com'rs Court*, 589 Fed. Appx. 664, 668 (5th Cir. 2014) (citations omitted), the Defendants City/Parish, at a minimum, are liable under a conditions of confinement theory.

**c. The Legal Obligations of the Defendant City/Parish**

The Defendant City/Parish has previously conceded that it was contractually obligated to provide medical care for detainees at EBRPP.[14] Not only was it so contractually obligated, the Defendant City/Parish was obligated pursuant to Louisiana statute to provide health care by either appointing a physician or contracting with a health care provider. *LA R.S. § 15:703*. The law further provides that a Parish may be liable if it fails in its statutory obligation to fund such services:

> A. The governing authority of each parish shall appoint annually a physician who shall attend prisoners who are confined in parish jails whenever they are sick. …
>
> B. In lieu of appointing a physician, the governing authority of any parish may enter into a contract with a health care provider, licensed or regulated by the laws of this state to provide requisite health care services as required in this Section.

---

[13] Rec Doc 38-3

[14] Rec Doc 45-2, p. 2.

> D. … The parish and its governing authority shall not be liable for any action arising as a result of the actions or inactions of the physician or health care provider…*unless the governing authority exercises gross negligence or willful misconduct in the performance of its duties and obligations imposed by this Section, and such gross negligence or willful misconduct was a substantial factor in causing the injury.*

*Id.* (emphasis added). As courts around the state have recognized, this statutory framework can result in parishes being liable for injuries to detainees at parish jails. *See*, *e.g. Jones v. Gusman*, No. 12-cv-859 (E.D. La. May 29, 2015), *Bailey v. E.B.R. Par. Prison*, CIV.A. 12-224-JJB, 2014 WL 1404574 (M.D. La. Apr. 10, 2014), *Roper v. Marino*, CIV. A. 92-3988, 1995 WL 222185, at *1 (E.D. La. Apr. 13, 1995), and *Amiss v. Dumas*, 411 So.2d 1137, 1139 (La. Ct. App.1982), *writ denied,* 415 So.2d 940 (La. 1982).

**d. Summary Judgment is Premature and Plaintiff Has a Right to Discovery**

The Defendant City/Parish prematurely seeks summary judgment by claiming in part that somehow Mr. Johnson failed "to take part in processing" because he was moved by Sheriff Gautreaux's deputies to a dorm.[15] In spite of what was then their contractual and statutory obligation to provide medical and mental health care to all EBRPP detainees needing care, the Defendant City/Parish claims that they have no control over whether detainees are provided care and that "[a]ll meetings between [Prison Medical Services'] medical staff and inmates are facilitated through sheriff deputies who give details on where and when a prisoner can receive care."[16] The Defendant City/Parish's own attachments to their motion for summary judgment, however, contradict their claim of no control or responsibility.

According to the "Health Screens" policy and procedure provided in support of the Motion, the Defendant City/Parish Prison Medical Services "has a plan" to screen for, *inter alia*,

---

[15] Rec Doc 57-2 at p.6 and Rec Doc 57-2 at p.3

[16] Rec Doc 57-2 at p.6

suicide risk and use of alcohol and drugs, within eight (8) hours of entering the facility.[17] Another document incorrectly states that Mr. Johnson arrived at the EBRPP at 11:22 a.m. on May 26, 2015 and was released.[18] Discovery is needed because Defendant City/Parish provided none of the relevant information for either document. Specific to the latter, basic questions include: Who made the handwritten notation that Mr. Johnson was "released," when was the incorrect information added to the document, where did the incorrect information came from, and when was the incorrect information conveyed to the person who added the incorrect information?

Perhaps more importantly and directly related to Plaintiff's allegations that the Defendant City/Parish's policy, practice, or custom caused Mr. Johnson's death, there is a chasm of factual dispute between the written Health Screens policy and the actual practice or custom. For example, a review of medical charts at EBRPP found that health screens did not occur for a full day to day and a half of admission, and for hundreds of detainees in a single month, no documentation of any medical care existed *at all.*[19] Although unclear whether the lack of documentation includes no health screens, this is precisely the type of information discovery is designed to uncover.

Finally, written Health Screens policy claims to provide detainees and Mr. Johnson at least two ways to access health care: 1) Submit requests for medical care through the sick call procedure; 2) Declare an emergency. Per the Defendant City/Parish policy, the former are "triaged by night shift" and "seen the next day." Emergency "care issues are seen

---

[17] Rec Doc 57 at p.6

[18] Id. at p.5

[19] Exh. A

immediately."[20] Based on public documents, however, we know that requests for sick call at EBRPP were up to 84% lower than average for a jail its size.[21] Allowing security to serve as a gatekeeper to medical and mental health care for detainees presents potentially grave consequences.[22] Courts have found guards individually liable for intentionally denying or delaying access to medical care, *Williams v. Certain Individual Employees of Texas Dept. of Criminal Justice—Institutional Division, et al.*, 480 Fed. Appx. 251, 256 (5th Cir. 2010) (citation omitted), and high level officials can be found liable if they "knew of a continuing pattern of culpable failures by guards of other prison staff to refer to health providers those prisoners with culpable complaints or manifest symptoms." *Alsina-Ortiz v. Laboy*, 400 F.3d 77, 81-82 (1st Cir. 2005). Discovery to explore the specific relationship between the Defendant City/Parish's official policy and actual practice and custom, and how it impacted Mr. Johnson, is important information for Plaintiff to gather before responding to the Motion.

## CONCLUSION

Plaintiff's Rule 56(d) motion for discovery should be granted to safeguard her from Defendant City/Parish's Motion for Summary Judgment that she cannot adequately oppose. The Defendant City/Parish has a constitutional, statutory, and contractual obligation to provide health care, including mental health care, to Mr. Johnson. As shown in herein and in the attached affidavit as Exhibit "B", summary judgment is premature and discovery warranted.

---

[20] Rec Doc 57 at pp.6-7

[21] Exh. A

[22] In yet another important line for discovery, HMA's discussion of this gatekeeper function implies they saw a problem without explicitly stating so. Regardless, placing Mr. Johnson's access to mental health care in the hands of the very guards whom Plaintiff accuses of abusing Mr. Johnson certainly presented deadly consequences to Mr. Johnson, and grave consequences to Plaintiff.

This 6th day of March, 2017.

Respectfully submitted,

WOOLF LAW FIRM

/s/ *David J. Utter*
DAVID J. UTTER
Louisiana Bar Number: 23236

408 East Bay Street
Savannah, Georgia 31401
(912) 201-3696 Telephone
(912) 236-1884 Facsimile
utter@woolflawfirm.net

THE CLAIBORNE FIRM, P.C.

/s/ *William R. Claiborne*
WILLIAM R. CLAIBORNE
Georgia Bar Number: 126363
*Appearing Pro Hac Vice*

410 East Bay Street
Savannah, Georgia 31401
(912) 236-9559 Telephone
(912) 236-1884 Facsimile
will@claibornefirm.com

**ATTORNEYS FOR PLAINTIFF**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| ADRIENNE LEWIS, by and on behalf of the minor child LIYAH ALEXANDRIA JOHNSON, | * * * | C/A No.: 3:16-cv-352-JWD-RLB |
| | * | |
| Plaintiffs, | * | JUDGE John W. deGravelles |
| | * | |
| VERSUS | * | |
| EAST BATON ROUGE PARISH; et al. | * * | MAGISTRATE JUDGE Richard L. Bourgeois, Jr |
| Defendants. | * * * | |
| ******************************* | * | |

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Memorandum in Support of Motion to Defer or Deny City of Baton Rouge/Parish of East Baton Rouge's Motion for Summary Judgment Pending Discovery. Notice of this filing will be sent by operation of the court's electronic filing system to counsel of record.

Respectfully submitted, this 6th day of March, 2017.

WOOLF LAW FIRM

*/s/ David J. Utter*
DAVID J. UTTER
Louisiana Bar Number: 23236

408 East Bay Street
Savannah, Georgia 31401
(912) 201-3696 Telephone
(912) 236-1884 Facsimile
**utter@woolflawfirm.net**

*Attorney for Plaintiff*