**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

ADRIENNE LEWIS, by and on behalf of
the minor child, LIYAH ALEXANDRIA
JOHNSON

                               **CIVIL ACTION**

v.

                               **NO. 16-352-JWD-RLB**

EAST BATON ROUGE PARISH, ET AL.

**RULING AND ORDER**

This matter comes before the Court on (1) the *Motion for Summary Judgment* (Doc. 57) (the "*MSJ*") filed by the Defendant, City of Baton Rouge/Parish of East Baton Rouge ("City/Parish"); (2) the *Motion to Defer or Deny City of Baton Rouge/Parish of East Baton Rouge's Motion for Summary Judgment Pending Discovery* (Doc. 64) (the "*Motion to Defer*") filed by Plaintiff, Adrienne Lewis, by and on behalf of the minor child Liyah Alexandria Johnson ("Plaintiff"); and (3) the *Motion to Strike Affidavit Filed in Support of Plaintiff's Motion to Defer or Deny City of Baton Rouge/Parish of East Baton Rouge's Motion for Summary Judgment Pending Discovery* (Doc. 65) (the "*Motion to Strike*") filed by the City/Parish. The *MSJ* is opposed by the Plaintiff through the *Motion to Defer* (Doc. 64) and in the *Memorandum in Response to City/Parish's Motion for Summary Judgment* (Doc. 68) filed by the Defendants, Sheriff Sid J. Gautreaux, III, in his individual and official capacity as Sheriff of East Baton Rouge Parish, Lieutenant Colonel Dennis Grimes, in his individual and official capacity as Warden of the East Baton Rouge Parish Prison, Lieutenant Michael Duplessis, Deputy Avery Kujawa, Deputy Dalton Canezaro, and Corporal Cedric Buckner (collectively, the "Sheriff Defendants"). The *Motion to Defer* is opposed by the City/Parish through the *Motion to Strike* (Doc. 65) and a separately filed memorandum in opposition by the City/Parish (Doc. 66). The

*Motion to Strike* is opposed by the Plaintiff. (Doc. 69). Oral argument is not necessary. The

Court has carefully considered the law, facts in the record, and arguments and submissions of the

parties and is prepared to rule. For the following reasons, the *MSJ* is denied, the *Motion to Defer*

is granted, and the *Motion to Strike* is denied.

## I.       Factual Background

This suit centers on the arrest, incarceration, and death of Lamar Johnson. Given the lack

of summary judgment evidence presented to the Court, the following account is primarily taken

from the Amended Complaint (Doc. 27).

On May 26, 2015, Johnson was arrested after a routine traffic stop for tinted windows.

(Doc. 27 at 6.) Within an hour he was booked into East Baton Rouge Parish Prison ("EBRPP")

due to a hold on Johnson from Jefferson Parish authorities for a four-year-old arrest warrant on a

non-violent charge. (Doc. 27 at 6.)

On May 28, 2015, while in EBRPP, Johnson pled guilty to a Baton Rouge ordinance for

not possessing his driver's license in 2009. (Doc. 27 at 7.) Johnson was sentenced to five (5)

days with credit for time served since he entered the jail on May 26, 2015. (Doc. 27 at 7.)

While in EBRPP, Johnson acquired and consumed synthetic marijuana called "mojo,"

which was "readily accessible by prisoners at EBRPP." (Doc. 27 at 7.) Synthetic marijuana can

have "unpredictable and, in some case, severe or even life-threatening" effects. (Doc. 27 at 7.)

Plaintiff claims that Johnson acquired and consumed mojo while in EBRPP. Plaintiff

asserts that "Johnson's reaction to mojo was severe," that "[h]e suffered paranoid delusions and

began talking out loud to himself," and that, though the effects were readily apparent, "EBRPP

staff ignored Mr. Johnson's serious medical needs." (Doc. 27 at 7.)

Plaintiff claims that Johnson was later physically attacked and pepper sprayed by some of the Sheriff Defendants, which caused Johnson to become more paranoid and delusional. (Doc. 27 at 7–8.)  Plaintiff alleges that:

> [A]ccording to interviews with individuals incarcerated with Mr. Johnson, Mr. Johnson was loudly, openly, and clearly in great emotional distress. Individuals incarcerated with Mr. Johnson who were eyewitnesses describe his condition as paranoid and suicidal, reporting specifically that Mr. Johnson was talking about killing himself, "not wanting to live" and stating he "couldn't take it" anymore.

(Doc. 27 at 8.) Plaintiff claims that some of the Sheriff Defendants knew of his emotional distress and suicidal statements "but chose to ignore his condition." (Doc. 27 at 8.)  Additionally, "EBRPP officials failed to perform a mental health assessment of Mr. Johnson." (Doc. 27 at 9.)

Despite his state, Johnson was moved to a different wing consisting of a row of solitary isolation cells. (Doc. 27 at 9.)  Plaintiff alleged that some of the Sheriff Defendants would "house mentally ill prisoners as a means to deny such prisoners access to mental health care." (Doc. 27 at 9.)  Further, rather than regularly monitor such inmates, some of the Sheriff Defendants would "falsely write in the logbook that they make their rounds." (Doc. 27 at 9.) According to the Amended Complaint, while in this new area, Johnson was again assaulted. (Doc. 27 at 10.)

The Amended Complaint alleges that, though it is unclear from records how long Johnson stayed in solitary, from 7:00 a.m. to 10:10 a.m. on May 30, 2015, some of the Sheriff Defendants claimed to have made rounds to check on Johnson.  (Doc. 27 at 10–11.)  At 10:22 a.m. that day, "Johnson was found hanging from his cell bars.  Mr. Johnson left EBRPP on a stretcher, brain damaged, but alive.  He died a few days later at a local hospital." (Doc. 27 at 11.)

Plaintiff now files this suit alleging that Johnson "died as a result of both unconstitutional conditions of confinement and particular individual defendants' deliberate indifference to Mr.

Johnson's constitutional rights." (Doc. 27 at 1.) Among his other claims, Plaintiff asserts several

counts against the City/Parish alleging § 1983 actions. These claims focus on *de facto* or explicit

polices or practices of the City/Parish and others that caused the constitutional violation. For

example, in Count One, Plaintiff alleges that the City/Parish, among other defendants, exposed

prisoners at EBRPP, including Johnson, to "violent and dangerous conditions of confinement so

extensive and pervasive that they reflect a *de facto* policy approved" by the City/Parish. (Doc.

27 at 16.) Count One continues:

> Such policies and practices include, but are not limited to, racial segregation of
> prisoner living areas, defects in physical design and manner of operation, including
> inadequate staffing, inadequate supervision techniques, poor sightlines, and
> inadequate monitoring of prisoner living areas that combined to result in frequent
> violence and a continuous pattern of constitutional deprivations for the prisoners in
> EBRPP, including Mr. Johnson.

(Doc. 27 at 16.) Further, the City/Parish and others "failed to provide appropriate medical and

mental health services to EBRPP prisoners, including Mr. Johnson, who was individually

harmed by the *de facto* policies and practices described above." (Doc. 27 at 17.)

## II.     Arguments of the Parties

In its *MSJ*, the City/Parish seeks dismissal of Plaintiff's claims against it. The

City/Parish's main argument is that it cannot be liable to the Plaintiff because it "had no

notice of Mr. Johnson's presences at the prison or his condition." [sic] (Doc. 57-2 at 5.)

In support of this argument, the City/Parish provides a three-paragraph affidavit of Rintha

Simpson, the former interim director of Prison Medical Services ("PMS"), "the entity

responsible for intake questionnaires and overall healthcare of prisoners." (Doc. 57 at 3.)

Simpson purportedly has "firsthand knowledge of the facts alleged in the captioned

litigation" and "has read the petition and is familiar with the allegation contained

therein." [sic] (Doc. 57 at 3.) No information is given as to the basis of her knowledge.

The affidavit refers to and attaches a "list of detainees" that were "in need of processing" on May 27, 2015. (Doc. 57 at 3–4.) Rintha states that "Johnson's name appeared on line three (3), but a note was made by the Sheriff's office to the effect that he was 'released.' Accordingly, PMS never saw Mr. Johnson and was unaware of his presence until May 30, 2015." (Doc. 57 at 4.) The attached document provides in relative part:

| MALES 28 FEMALES 0 TOTAL 28 | C.B. INMATES | | 5/27/15 |
|---|---|---|---|
| ales | DOA Time | Comments | |
| 1 DOMOND, JEVONTE B M 12/08/92 Dist. Court | 05/25/15 16:00 | | |
| 2 CHAMBERS, PATRICK B M 05/16/86 | 05/25/15 20:21 | | |
| 3 JOHNSON, LAMAR B M Released | 05/26/15 11:22 | | |
| 1 BRANSTETTER, JASON | 05/26/15 12:02 | | |

(Doc. 57-5 at 1.) The City/Parish also argues (without evidence) that "Mr. Johnson's failure to take part in processing is further evidenced by the lack of documentation that he completed any of the governmental requirements including receiving the prison handbook." (Doc. 57-2 at 6.)

The Sheriff Defendants oppose the *MSJ* (Doc. 68) on the grounds that the City/Parish had a duty to provide medical care to inmates at EBRPP and that the City/Parish has failed to support its motion with sufficient summary judgment evidence. (Doc. 68 at 1–2.) The Sheriff Defendants provide evidence that Simpson was not the interim director of PMS in May 2015 and was in fact not even working in the EBRPP in any capacity in May 2015. (Doc. 68-1 at 1.) The Sheriff Defendants contend that Simpson thus lacks personal knowledge. (Doc. 68 at 2–3.) The Sheriff Defendants also attack Rintha's conclusions about the intake form. (Doc. 68 at 3–4.) They argue that Rintha does not identify who with the Sheriff's office allegedly wrote "released," how

she knew it, when it was written, and under what circumstances it was written. (Doc. 68 at 4.) The Sheriff Defendants also submit as evidence the EBRPP Intake Form for Lamar Johnson and the Prison Rape Elimination Act ("PREA") Screening Checklist (Doc 68-1 at 2–4) to demonstrate that there was no "lack of documentation" that Johnson completed governmental requirements.

In the *Motion to Defer*, Plaintiff contends that the Court should, pursuant to Fed. R. Civ. P. 56(d), defer ruling on (or deny) the *MSJ* until Plaintiff has had an opportunity to conduct discovery. (Doc. 64 at 1.) Plaintiff points out that, because the defendants in this action have filed motions to dismiss, no discovery has been conducted. (*See* Doc. 29 (Order canceling status conference and requiring plaintiff to contact the Court after a ruling is issued for the motions to dismiss).) Plaintiff contends that, despite no discovery, "Plaintiff has provided factual support for her claims that the conditions of confinement at EBRPP are unconstitutional, medical and mental health care is denied to detainees at EBRPP, and that the unconstitutional conditions and denial of mental health care led to the death of Mr. Johnson." (Doc. 64 at 2.) Plaintiff then cites to documents submitted in connection with her opposition to the pending motion to dismiss by the Sheriff Defendants. (*See* Doc. 38-3.) Plaintiff argues that, in her memorandum and her attorney's affidavit, she has articulated "a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist," and she has "indicate[d] how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." (Doc. 64 at 2 (citing *American Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013).)

In support of her motion, Plaintiff attaches the Affidavit of David J. Utter, one of her attorneys. (Doc. 64-3.) After briefly describing his experience in these types of cases and some

6

of the problems he has learned about EBRPP, he provides several paragraphs describing what discovery he intends to take. (Doc. 64-3 at 2–6.) Plaintiff claims this discovery will preclude summary judgment by demonstrating an issue of material fact, specifically "whether on or about May 26, 2015, through May 30, 2015, there was a City/Parish policy or custom to provide inadequate medical and mental health care at the EBRPP by providing insufficient staff, inadequate facilities, and inadequate access to health care, including mental health care, to detainees, including Mr. Johnson." (Doc. 64-3 at 5.)  Plaintiff claims that the City/Parish's MSJ will be denied because "by adopting, endorsing, funding, and implementing a policy and custom that provided inadequate medical and mental health care at the EBRPP, the Defendant City/Parish effectively denied access to care and caused his death" and because "Defendant City/Parish cannot both create a system that denies access to care and then claim that, because Mr. Johnson failed to access the health care system, they are not liable for the unconstitutional system they created." (Doc. 64-3 at 5.)

Additionally, in his memorandum in support, Plaintiff identifies other information that warrants further discovery.  For instance, Plaintiff asks specific questions that must be answered for the document submitted by the City/Parish in support of its *MSJ*, including: "Who made the handwritten notation that Mr. Johnson was 'released,' when was the incorrect information added to the document, where did the incorrect information came from [sic], and when was the incorrect information conveyed to the person who added the incorrect information?" (Doc. 64-1 at 8.)  Plaintiff also addresses the "chasm of factual dispute between the written Health Screens policy and the actual practice or custom" of the City/Parish (Doc. 64-1 at 8), including the lack of relevant documentation available.

In the *Motion to Strike*, the City/Parish seeks to exclude Utter's affidavit. (Doc. 65 at 1.)

The City/Parish claims that Utter cannot be an advocate and a witness and that Utter is running

afoul of the Rules of Professional Conduct (specifically, ABA Model Rule of Professionalism

3.7). (Doc. 65-1 at 3.) The City/Parish objects to the portion of Utter's affidavit related to his

investigation as being based on hearsay.  The City/Parish objects to most of the affidavit as being

based on Utter's "belief" and as being an "attempt to quantify himself as an expert in southern

jail cases." [sic] (Doc. 65-1 at 3.)   As to the list of discovery items sought, the City/Parish says

that the discovery "would have no bearing on this case" because this part of the affidavit

"overlook[s] the simple fact that [PMS] never saw Mr. Johnson, never evaluated Mr. Johnson,

never put him through the normal medical intake procedure, did not treat Mr. Johnson, and did

not ever establish a patient/health care provider relationship with" him. (Doc. 65-1 at 4.)  The

City/Parish describes Utter's affidavit as "simply a lame attempt to create an issue where there is

none." (Doc. 65-1 at 4.)  The City/Parish concludes with a request to strike the affidavit. (Doc.

65-1 at 4.)

In its opposition to the *Motion to Defer*, the City/Parish reiterates that Utter's affidavit is

inadmissible in full. (Doc. 66 at 1.) The City/Parish further states:

> In an effort to improve the operation of [EBRPP], the City/Parish solicited the
> services of Health Management Associates to review the prison and make
> recommendations for its improvement.  To prove that no good deed goes
> unpunished, plaintiff now wants to use that study as a basis to assert the
> unconstitutionality of the prison environment.  This request omits the fact that Mr.
> Johnson was never seen by Prison Medical Services.  Any exploration of the Health
> Management study would be completely irrelevant and immaterial to any of the
> issues presently before the Court.  What difference does it make how good, or how
> bad, the prison healthcare services is when this decedent never availed himself of
> those facilities. [sic]

(Doc. 66 at 1–2.)  The City/Parish again urges that the requested discovery is irrelevant.  The City/Parish concludes, "We are sorry for Ms. Lewis' loss, but we were in no way involved in her decedent's demise." (Doc. 66 at 2.)

In her response to the *Motion to Strike*, Plaintiff asserts that the affidavit is admissible for the purpose for which it was introduced: as "a good faith effort to comply with Rule 56(d)[.]" (Doc. 69 at 4.)  Plaintiff claims that she "submitted an affidavit from one of the few people with personal knowledge of the specific facts that probably exist, and of how those facts, if adduced, will influence the outcome of the pending summary judgment motion." (Doc. 69 at 5.)  Plaintiff contends that the City/Parish misses the point: "Mr. Utter's affidavit is submitted in support of Plaintiff's Rule 56(d) motion for more time in order to conduct discovery; it is not submitted solely for the purpose of defeating summary judgment." (Doc. 69 at 5–6 (citing *Muhliesen v. Receivable Recovery Services, LLC*, 2012 WL 787056, *1 (E.D. La. Mar. 8, 2012).) Plaintiff argues that, to the extent there is inadmissible evidence in the affidavit, the Court should consider only those parts relevant to the Rule 56(d) request. (Doc. 69 at 6.)

III.    **Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or

by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)

(citations and internal quotations omitted). "Where the record taken as a whole could not lead a

rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' "

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of
> the witnesses, weigh the evidence, or resolve factual disputes; so long as the
> evidence in the record is such that a reasonable jury drawing all inferences in favor
> of the nonmoving party could arrive at a verdict in that party's favor, the court must
> deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (citations

omitted).

## IV. Analysis

The Court will deny the City/Parish's *MSJ* on two main grounds. First, the Court finds

that summary judgment is not appropriate on the merits of the City/Parish's motion. Second, the

Court finds that the Plaintiff has satisfied her burden under Rule 56(d).

### A. The Merits

The Court finds two bases for denying the motion for summary judgment on the merits.

First, the City/Parish lacks competent summary judgment evidence. "An affidavit or declaration

used to support or oppose a motion [for summary judgment] must be made on personal

knowledge, set out facts that would be admissible in evidence, and show that the affiant or

declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). As the Sheriff

Defendants correctly argue, the City/Parish has failed to demonstrate that Rintha Simpson's

affidavit was based on personal knowledge or that she's competent to testify on the matters

stated. Aside from a conclusory assertion that "she has firsthand knowledge of the facts alleged

in the captioned litigation" and that she "is the former interim director of . . . PMS," there is no

evidence that Simpson was the interim director at the time of the events underlying this suit or that she has any other basis to know any specifics about the document she relies upon and attempts to interpret. Because most of her conclusions are not based on personal knowledge, the Court will strike them. *See Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir. 2003) (striking an affidavit not based on personal knowledge). As a result, even if the City/Parish's arguments did warrant summary judgment (and the Court is making no such finding at this time), there is simply no admissible evidence to support them. On this basis alone, the *MSJ* should be denied.

Second, again viewing the merits of the *MSJ*, the Sheriff Defendants have established a genuine issue of material fact precluding summary judgment. Specifically, the EBRPP Intake Form for Lamar Johnson and the PREA Screening Checklist (Doc 68-1 at 2–4) demonstrate that there is documentation tending to show that Johnson was booked through normal processing, and a reasonable inference from that evidence is that he was also seen by PMS employees at that time. While further evidence later in the case may lead the Court to a different conclusion, based on the very limited record before the Court at this time, summary judgment is not warranted.

### B. Rule 56(d)

The Court also finds that Plaintiff has sustained his burden under Rule 56(d). Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" take certain actions, including "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." District courts have discretion to grant or deny a Rule 56(d) motion. *See Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (citing *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010). "Rule 56(d) motions for additional discovery are ' "broadly favored and should be liberally granted" because

the rule is designed to "safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." ' " *Am. Family*, 714 F.3d at 894 (quoting *Raby*, 600 F.3d at 561) (quoting *Culwell v. City of Fort Worth,* 468 F.3d 868, 871 (5th Cir. 2006))). "Nevertheless, non-moving parties requesting Rule 56(d) relief 'may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts.' " *Am. Family*, 714 F.3d at 894 (quoting *Raby*, 600 F.3d at 561). "Instead, the non-moving party must 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.' " *Am. Family*, 714 F.3d at 894 (quoting *Raby*, 600 F.3d at 561). Nevertheless, "[t]he purpose of [Rule 56(d)] is to provide non-movants with a much needed tool to keep open the doors of discovery in order to adequately combat a summary judgment motion." *Wichita Falls Office Assocs. v. Banc One Corp*., 978 F.2d 915, 919 (5th Cir. 1992) (reversing district court for refusing to defer ruling on a motion for summary judgment). "Technical, rigid scrutiny of a [Rule 56(d)] motion is inappropriate." *Union City Barge Line v. Union Carbide Corp.*, 823 F.2d 129, 136 (5th Cir. 1984) (citations omitted). [1]

The Court finds that Plaintiff easily satisfies these requirements. No discovery in this suit has taken place, and discovery will not take place until the Court resolves the pending motions to dismiss. (*See* Doc. 29, 64-3 at 5.) Moreover, as mentioned above, Plaintiff extensively details in Utter's affidavit what exactly she will seek in discovery:

- "discovery that discloses what . . . [the] City/Parish officials knew about the health care provided at EBRPP and when they knew it," including depositions of current or former City/Parish employees that would show "that the constitutionally deficient health care that caused Mr. Johnson's death was a persistent, widespread practice of city officials or employees, so common and

---

[1] *Wichita Falls* and *Union City* refer to Rule 56(f), but these cases are still relevant. The 2010 Advisory Committee Note to Rule 56 explains that Rule 56(d), as it currently reads, "carries forward without substantial change the provisions of former subdivision (f)."

well settled as to constitute a custom that fairly represents City/Parish policy," Plaintiff includes the names of ten specific individuals, including high ranking officials with the City/Parish and health care providers. (Doc. 64-3 at 3.)

- "documents related to the medical and mental health care provided at EBRPP during the time Mr. Johnson was detained, including the operational policies and procedures, organizational chart, staffing levels, and actual staffing on the days Mr. Johnson was detained, and other documents related to the quality of health care, or lack thereof, delivered to EBRPP detainees by" PMS. (Doc. 64-3 at 4.)

- documents specifically related to the PowerPoint dated June 8, 2016 titled "Report and Recommendations Clinical Operations at East Baton Rouge Parish Prison" by Health Management Associates," which Plaintiff describes as a "recent independent evaluation . . . of the system [of] health care provided to prisoners at EBRPP[.]" (Doc. 64-3 at 4; 64-1 at 2.) This include information related to interviews with specific individuals, documents provided by the City/Parish, information and factual findings to support the conclusion that EBRPP "is only meeting 36% of the actual medical needs and 61% of the actual mental health needs of its prisoners," information concerning the inmate screening process at EBRPP, information related to conclusions reached about access to care at EBRPP. (Doc. 64-3 at 4–5.)

This list clearly provides a "plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist[.]" *Am. Family*, 714 F.3d at 894 (quoting *Raby*, 600 F.3d at 561);

Equally important, Plaintiff has "indicate[d] how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Am. Family*, 714 F.3d at 894 (quoting *Raby*, 600 F.3d at 561). Plaintiff has asserted several *Monell* claims against the City/Parish. "Proof of municipal liability sufficient to satisfy *Monell* requires: (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (citing

*Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)).  The definition of "policy"

includes:

> A persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Pineda*, 291 F.3d at 328.

Reading this standard in conjunction with the sought-after discovery, the Court finds that,

if Plaintiff obtains the above information, it would certainly affect the outcome of the

City/Parish's motion.  As the Plaintiff himself states, the discovery will answer the question of

"whether on or about May 26, 2015, through May 30, 2015, there was a City/Parish policy or

custom to provide inadequate medical and mental health care at the EBRPP by providing

insufficient staff, inadequate facilities, and inadequate access to health care, including mental

health care, to detainees, including . . . Johnson." (Doc. 64-3 at 5.)  The discovery could also

provide a question of fact as to whether the City/Parish's policymakers had actual or constructive

knowledge of these policies or customs.

In sum, given the fact that Rule 56(d) motions are "broadly favored and should be

liberally granted, *Am. Family*, 714 F.3d at 894 (quoting *Raby*, 600 F.3d at 561), and considering

the substantial showing made by the Plaintiff, the Court finds that the *MSJ* is denied on this

additional ground, and Plaintiff's *Motion to Defer* is granted.

Additionally, the *Motion to Strike* is denied.  The City/Parish has pointed to no authority

indicating that an affidavit of an attorney is inadmissible for the limited purpose in which the

Plaintiff is offering it—that is, in support of a Rule 56(d) motion.  Moreover, case law confirms

that there is no basis in law for the City/Parish's position. *See, e.g.*, *Wade v. Baywater Drilling*,

*LLC*, No. 15-5689, 2017 WL 993137, at *2 (E.D. La. Mar. 15, 2017) (granting a Rule 56(d) motion based on an affidavit from an attorney); *Ford v. Msip I Jackson, LLC*, No. 15-692, 2016 WL 3180125, at *2 (S.D. Miss. June 3, 2016) ("Plaintiff complied with Rule 56(d), submitting an affidavit from his attorney, as well as his own affidavit, in support of his request for discovery"); *Owens v. Ethicon, Inc.*, No. 10-190, 2010 WL 5057462, at *1 (M.D. La. Dec. 6, 2010) (granting a Rule 56(f) motion following an amendment "to include a supporting affidavit by her attorney"). Thus, the City/Parish's motion is, at best, groundless, and, at worst, a waste of the Court's time.

## V.      Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion for Summary Judgment* (Doc. 57) filed by the Defendant, City of Baton Rouge/Parish of East Baton Rouge (the "City/Parish") is **DENIED**;

**IT IS FURTHER ORDERED** that the *Motion to Defer or Deny City of Baton Rouge/Parish of East Baton Rouge's Motion for Summary Judgment Pending Discovery* (Doc. 64) filed by Plaintiff, Adrienne Lewis, by and on behalf of the minor child Liyah Alexandria Johnson, is **GRANTED**; and

**IT IS FURTHER ORDERED** that the *Motion to Strike Affidavit Filed in Support of Plaintiff's Motion to Defer or Deny City of Baton Rouge/Parish of East Baton Rouge's Motion for Summary Judgment Pending Discovery* (Doc. 65) filed by the City/Parish is **DENIED**.

Signed in Baton Rouge, Louisiana, on May 30, 2017.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**