# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ADRIENNE LEWIS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-352-JWD-RLB** |
| **EAST BATON ROUGE PARISH, ET AL.** | |

## ORDER

Before the Court is Plaintiff's Second Motion to Compel Against Sheriff Sid J. Gautreaux, III (R. Doc. 118) filed on June 11, 2018. The motion is opposed. (R. Doc. 135). Plaintiff has filed a Reply. (R. Doc. 138).

**I.    Background**

Adrienne Lewis, by and on behalf of the minor child L.A.J. ("Plaintiff"), filed this civil rights action regarding the arrest, incarceration, and death of Lamar Johnson while held at the East Baton Rouge Parish Prison ("EBRPP"). (R. Doc. 1; R. Doc. 27).

In the Amended Complaint, Plaintiff alleges that on May 26, 2015, Mr. Johnson was arrested after a routine traffic stop for tinted windows, held at the EBRPP on an arrest warrant for a non-violent charge, and sentenced to five days in prison. (R. Doc. 27 at 6-7). Plaintiff alleges that while confined, Mr. Johnson acquired and consumed synthetic marijuana called "mojo" and suffered paranoid delusions and extreme emotional distress. (R. Doc. 27 at 7). Plaintiff alleges that certain Sheriff Defendants later physically attacked and pepper sprayed Mr. Johnson and moved him to a wing consisting of a row of solitary isolation cells, and that Mr. Johnson was again attacked while in solitary confinement. (R. Doc. 27 at 9-10). On May 30,

2015, Mr. Johnson was found hanging from his cell bars, and died a few days later at a local hospital. (R. Doc. 27 at 11).

Plaintiff alleges that Mr. Johnson "died as a result of both unconstitutional conditions of confinement and particular individual defendants' deliberate indifference to Mr. Johnson's constitutional rights." (Doc. 27 at 1). Plaintiff further alleges that the unlawful policies and practices at the EBRPP include "racial segregation of prisoner living areas, defects in physical design and manner of operation, including inadequate staffing, inadequate supervision techniques, poor sightlines, and inadequate monitoring of prisoner living areas that combined to result in frequent violence and a continuous pattern of constitutional deprivations for the prisoners in EBRPP, including Mr. Johnson." (R. Doc. 27 at 16).

On August 25, 2017, the district judge issued a ruling granting in part and denying in part the Sheriff Defendants' motion to dismiss. (R. Doc. 78). In relevant part, the district judge stated that based on Plaintiff's allegations, as well as prisoner declarations demonstrating "the prevalence of (1) guards failing to make rounds and falsifying logbooks, (2) inmates being segregated, (3) dangerous drugs, (4) violence from guards, and (5) 'very bad' medical care," Plaintiff had sufficiently pled that Mr. Johnson's "death came not just from a single incident but from a series of interactions with the jail's medical system that inevitably led to his death and from medical care that was grossly inadequate due to poor or non-existent procedures and understaffing of guards and medical personnel. . . ." (R. Doc. 78 at 58) (quotations omitted). Noting that Plaintiff had specifically alleged that at least four people had died at EBRPP "due to inadequate medical and mental health care" since 2013, the district judge stated that the alleged constitutional inadequacies were not mere "isolated examples" and that Plaintiff had a "reasonable expectation that discovery will lead to admissible evidence of exactly the type of

2

pervasive pattern of serious deficiencies in providing for . . . basic human needs . . . ." (R. Doc. 78 at 59) (quotations omitted).

On April 9, 2018, Plaintiff served her Second Set of Requests for Production of Documents to Sheriff Sid Gautreaux. (R. Doc. 118-3). The requests for production sought "all records of incident reports, disciplinary reports, use of force reports, memos or emails . . . including but not limited to information reports . . . relating to" 25 individuals who died at the EBRPP from January 15, 2012 to February 2, 2017.[1] For all but one of the requests, Sheriff Gautreaux objected on the basis of relevance, disproportionality, undue burden with respect to any production of electronically stored information ("ESI"), and confidentiality. (R. Doc. 118-4). With respect to Jesus Leyva, who died of suicide on October 7, 2012, Sheriff Gautreaux agreed to produce responsive information, with the exception of ESI, after entry of a protective order governing the exchange of confidential information. (R. Doc. 118-4 at 3).

On May 17, 2018, counsel for the parties conferred regarding the foregoing objections, and the parties agreed that they were unable to reach a resolution without court involvement. (R. Doc. 118-6).

On June 11, 2018, Plaintiff filed the instant motion. (R. Doc. 118). In relevant part, Plaintiff argues that she is entitled to evidence sought to prove deliberate indifference and municipal liability, and, given that inadequate medical care is endemic at the EBRPP,[2] investigations into other deaths, including deaths occurring after Mr. Johnson's death, will likely reveal evidence helpful to proving Plaintiff's allegations. (R. Doc. 118-1 at 6-14). Plaintiff also

---

[1] Plaintiff independently obtained certain national reports regarding these individuals submitted to the Bureau of Justice Statistics. (R. Doc. 118-5).
[2] In support of her assertion that there is an endemic problem of inadequate medical care at the EBRPP, Plaintiff submits with her motion two 2016 reports by Health Management Associates (R. Doc. 118-7; R. Doc. 118-8) and cites certain rulings by this Court addressing allegations raised by the survivors of other deceased inmates (*see* R. Doc. 118-1 at 8-11). The Court makes no finding in the instant Order regarding whether Plaintiff has established any evidence of an endemic problem of inadequate medical care at the EBRPP relevant to Plaintiff's claims.

submits copies of internal investigations into Mr. Johnson's death (R. Doc. 118-9; R. Doc. 118-10) in support of a finding that "the documents for each investigation are not voluminous and there is no evidence that the Sheriff would have to perform any extended search for these files. (R. Doc. 118-1 at 3 n.1).

In opposition, Sheriff Gautreaux argues that with the exception of certain documents related to Jesus Levya, who died of suicide prior to Mr. Johnson, the information sought by Plaintiff is irrelevant because the other deceased inmates did not die of suicide, died after Mr. Johnson, or both. (R. Doc. 135 at 3-15). Sheriff Gautreaux further argues that the discovery requests are not proportional to the needs of the case because they are not limited to investigation reports and records, and that any order requiring the production of documents pursuant to the instant requests will require the entry of a new protective order governing the exchange of confidential information. (R. Doc. 135 at 15-18).

On August 1, 2018, the Court held oral argument on the instant motion, as well as other related discovery motions, and suspended all discovery deadlines in this action. (R. Doc. 157). At oral argument, Plaintiff's counsel argued that multiple failures by the staff at the EBRPP contributed to Mr. Lamar's death, including the lack of medical screening, not responding to requests for help, his placement in solitary confinement, and delay by EMS in responding to his need for medical treatment. Plaintiff's counsel further argued that he was unable to know for certain, without the review of additional information, whether the other deaths subject to the discovery requests had additional contributing factors other than the ones identified in the reports submitted to the Bureau of Justice Statistics. Defense counsel acknowledged that certain internal investigation reports and records leading up to the national reports obtained by Plaintiff would exist for the other deceased inmates at issue. Defense counsel further emphasized that the

document requests, which also sought ESI for each of the 25 inmates who died at the EBRPP, were overly broad as written. At argument, counsel for both parties further agreed that a new protective order governing the exchange of confidential information would be required if any documents were ordered produced pursuant to the instant discovery requests.

**II.     Law and Analysis**

   **A.     Legal Standards**

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific

demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

**B.     Analysis**

Having reviewed the discovery requests at issue, and having considered the arguments of the parties, the Court concludes that the discovery requests, as written, seek information outside of the scope of discovery. The discovery requests seek virtually all information in Sheriff Gautreaux's possession, custody, or control regarding 25 individuals who died at the EBRPP from January 15, 2012 to February 2, 2017, including all incident reports, disciplinary reports, use of force reports, memoranda, and e-mails "relating" to those individuals. Plaintiff's arguments regarding the relevance of the information sought is based solely, at this stage of the litigation, upon Plaintiff's conjecture that certain acts or omissions by defendants contributed to the deaths of the 25 individuals other than the stated "cause of death" in the reports submitted to the Bureau of Justice Statistics. In the absence of more specific evidence that the defendants in any way contributed to the deaths of these 25 individuals, the Court will not require Sheriff Gautreaux to produce virtually every document and email "relating" to these 25 individuals simply because they, too, died while at the EBRPP. The requests are overbroad and not proportionate to the needs of this case.

The Court recognizes, however, that the internal investigation reports and Sheriff's Office reports leading to the official reports submitted to the Bureau of Justice Statistics may provide relevant information supporting Plaintiff's claims regarding a "continuous pattern of constitutional deprivations" that contributed to the inmate's deaths. Given the nature of Plaintiff's claims, as well as the district judge's August 25, 2017 ruling, the Court will require

6

Sheriff Gautreaux to produce the copies of internal investigation reports and Sheriff's Office report concerning the deaths of each of the inmates identified in Plaintiff's Second Set of Requests for Production of Documents. This will provide Plaintiff an opportunity to identify potential situations, if any, in which a "continuous pattern of constitutional deprivations" contributed to other inmate deaths, without imposing an undue burden on Sheriff Gautreaux. After a review of these documents, Plaintiff will be better equipped to make more reasonable and narrow requests for any additional information that falls within the scope of discovery.

The Court has considered the arguments set forth by the parties regarding the relevance of records concerning inmate deaths after the death of Mr. Johnson. The U.S. Supreme Court has noted that, in a Section 1983 action, "contemporaneous or subsequent conduct cannot establish a pattern of violations" to prove a policymaker's deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 63 n.7 (2011). Plaintiff nevertheless relies in part on a Fifth Circuit decision, *Grandstaff v. City of Borger, Texas*, 767 F.2d 161 (5th Cir. 1985), for the proposition that a "municipality's post-incident conduct is relevant and admissible on *Monell* claims because it can shed light on what policies existed at the time of the incident." (R. Doc. 118-1 at 12-13). That action involved a Section 1983 deadly force claim against a city and its police officers after six officers "poured their gunfire" into an innocent man's truck, believing the man to be a fugitive, "without awaiting any hostile act or sound." *Grandstaff*, 767 F.2d at 168. The Fifth Circuit held that "subsequent acceptance of dangerous recklessness by the policymaker tends to prove his preexisting disposition and policy," and allowed the plaintiffs to admit evidence of the policymaker's reaction to the alleged constitutional deprivation. *See id.* at 171-72. At least one decision by a district court has expressly distinguished *Grandstaff* in precluding a plaintiff from "introduc[ing] evidence of other inmate suicides or deviations from [the prison's] written suicide

prevention policy that occurred after [the decedent's] death." *Nagle v. Gusman*, No. 12-1910, 2016 WL 9411375, at *2 (E.D. La. Mar. 8, 2016) (excluding evidence of defendant's conduct after the suicide of the decedent).

This action remains at the discovery stage of litigation. The limited set of information that the Court is requiring produced at this time – internal investigation reports and Sheriff's Office reports – may lead to the discovery of admissible evidence, even where the underlying deaths occurred after that of Mr. Johnson. These documents may identify relevant individuals and clarification on what policies and practices existed at the time of Mr. Johnson's death. Information need not ultimately be admissible into evidence to be discoverable. Fed. R. Civ. P. 26(b). In finding that the limited scope of information allowed by this Order falls within the scope of discovery, the Court issues no ruling on the potential admissibility of post-incident information with regard to Plaintiff's claims. That issue can be addressed after the close of discovery.

### III. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Second Motion to Compel Against Sheriff Sid J. Gautreaux, III (R. Doc. 118) is **GRANTED IN PART and DENIED IN PART**. Sheriff Gautreaux must produce the records identified in this motion within **14 days** of the entry of a protective order governing the exchange of confidential information in this action, or as otherwise agreed upon by the parties.

Signed in Baton Rouge, Louisiana, on August 10, 2018.

　　　　　　　　　　　　　　　　　　　　　　　　　　
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**