UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**ADRIENNE LEWIS, by and on behalf**  **CIVIL ACTION**
**of the minor child LIYA ALEXANDRIA**
**JOHNSON**

**VERSUS**

**EAST BATON ROUGE PARISH, ET AL.**  **NO. 3:16-CV-352-JWD-RLB**

**MEMORANDUM IN OPPOSITION TO**
**PLAINTIFF'S FOURTH MOTION TO COMPEL**

**MAY IT PLEASE THE COURT:**

The defendant, the City of Baton Rouge/Parish of East Baton Rouge ("City/Parish"), through undersigned counsel, submits this Memorandum in Opposition to plaintiff's Fourth Motion to Compel & Motion for Protective Order as follows:

**PROCEDURAL BACKGROUND**

On February 26, 2019, the plaintiff propounded her Sixth Set of Requests for Production of Documents upon the City/Parish. On March 27, 2019, the City/Parish timely provided its response and corresponding document attachments. By way of email, the parties coordinated a requested a Rule 37(a) Conference regarding the City/Parish's responses, and held said conference on March 28, 2019. Pursuant to the agreements reached therein, the City/Parish supplemented its responses on March 29, 2019. However, the personnel records of nurses who came into contact with Johnson after his attempted suicide are being improperly requested and the City/Parish maintains its objection against production of same.

**STANDARD OF LAW**

Under the Federal Rules of Civil Procedure, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs

of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). A determination of relevancy is tied to applicable substantive law and then weighed against six proportionality factors. Any information sought that is not relevant to a party's claim or defense is not discoverable, regardless of proportionality. *Tingle v. Hebert*, 2017 WL 2494626 at 3 (M.D.La. 6/9/17) (*citing* Fed. R. Civ. P. 26(b)(2)(C)).

The Court must additionally limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." *Tingle v. Hebert*, 2017 WL 2494626 at 3 (M.D.La. 6/9/17) (*citing* Fed. R. Civ. P. 26(b)(2)(C)).

Rule 26(c)(1) states:

*In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending -- or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
    (A) forbidding the disclosure or discovery;
    …
    (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
    …

2

F.R.C.P. Rule 37(a)(5)(B) states:

**(B)** *If the Motion [to Compel] Is Denied.* If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

## LAW & ARGUMENT

The plaintiff's fourth Motion to Compel seeks the production of training and disciplinary records within personnel files of four licensed practical nurses ("LPNs"), who were employed by the City/Parish at the time of Lamar Johnson's incarceration at the jail: Casani Moton, Thu Thu Fontenot, Kim Bates, and Michelle Antoine. However, the documents sought are irrelevant to the claims and defenses of this matter. Additionally, the plaintiff's reliance on a prior discovery ruling by the Court pertaining to a former co-defendant herein is distinguishable and inapplicable to the documents requested of the City/Parish. Finally, the jurisprudence relied upon by the plaintiff carries no weight in support of its contention here.

   I.   **The proportionality factors do not support production.**

The plaintiff's request for the training and disciplinary records of the nurses, who rendered care for Johnson after his attempted suicide, are not relevant to the plaintiff's claims or the City/Parish's defenses. There are six proportionality factors that must be considered in a determination of the relevancy: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. *Tingle v. Hebert*, 2017 WL 1726667 at 7 (M.D.La. 4/10/18) (*citing* Fed.R.Civ. P. 26(b)(1)).

3

Here, Lamar Johnson was incarcerated at East Baton Rouge Parish Prison between May 26-30, 2015. Johnson attempted suicide while within the Parish jail, and he was resultantly delivered to an acute care facility, where he passed away days later. In sum, the plaintiff claims that the City/Parish's health care policies and/or physical facility at the Parish jail created a constitutional deprivation of rights for Mr. Johnson that inevitably caused or otherwise contributed to his death. *Referring to* Rec. Doc. 27 at 6-25.

However, the plaintiff directs the Court's attention to what appear on their face to be allegations of medical malpractice. For example, the plaintiff argues that she has learned through discovery that the emergency medical responders who arrived at the jail critiqued the LPNs' medical treatment as a "lack of proper treatment." Rec. Doc. 197-1 at 7 (*citing* Movant's Exhibit F, Rec. Doc. 197-7 at 2). Continuing, the plaintiff expounds upon the decedent's physical condition and the medical analyses and skills applied or not applied by the LPNs, such as "maintaining C-spine alignment." *Id*.

Where the plaintiff had alleged medical malpractice or negligence against the City/Parish and/or its employees, then there would be a basis to discover such materials. However, the allegations directed toward the City/Parish consist of intentional actions or inadequacies surrounding the jail policies and the physical conditions of the facility directly causing or contributing to Johnson's death. There is no rationale relationship between the personnel files of four nurses who only came into contact with Johnson after his attempted suicide through his departure from the jail via ambulance.

The plaintiff effectively acknowledges that the LPNs were not deliberately indifferent to the needs of the patient. Even in the light most favorable to the plaintiff, the only basis for a cause of action sounds in medical malpractice and potentially a lost chance of survival. But the

4

plaintiff claims only intentional acts or inactions against the City/Parish and not its employees. Even assuming each of the LPNs' training and disciplinary records reflected a total lack of medical training (which would contradict their licensure as licensed practical nurses) and an immense volume of disciplinary action, there still exists no basis to leap to deliberate indifference or another intentional infliction of a deprivation of constitutional rights. Rather, the only rational cause of action would sound in medical malpractice. Accordingly, the personnel records are not relevant to the plaintiff's accusations that the City/Parish violated Johnson's constitutional rights through its jail policies and physical structure of the jail facility.

**II.     The LPNs are not connected to this matter as were the deputies.**

The plaintiff contends that she should be provided the training and disciplinary records within the personnel files of any nurse who came into contact with Johnson after his attempted suicide based upon her contention that Johnson "died as a result of both unconstitutional conditions of confinement and particular individual defendants' deliberate indifference to Mr. Johnson's constitutional rights." Rec. Doc. 27 at 1. However, the "defendants' deliberate indifference" referred to within the Amended Complaint, Rec. Doc. 27, is limited to the East Baton Rouge Parish Sheriff's Office defendants, which encompasses Sheriff Sid. J. Gautreaux, III; Lieutenant Colonel Dennis Grimes; and deputies Michael Duplessis; Avery Kujawa; Dalton Canezaro; Cedric Buckner; Robb [sic]; Broadway [sic]; and J. Does #50-99. Rec. Doc. 27 at 3-5. The only named party-defendant sued through in connection with the City/Parish is the City/Parish, itself:

> **CITY OF BATON ROUGE/PARISH OF EAST BATON ROUGE ("CITY-PARISH")** is a political entity capable of suing and being sued. The **CITY-PARISH** is the entity responsible for funding operations and maintenance, including necessary improvements, repairs, routine daily maintenance, purchase of equipment, supplies, and materials needed for such purposes, and for utility

5

services, of the EBRPP. In addition, the **CITY-PARISH** is responsible for the food, clothing, medical treatment, and related expenses for prisoners housed in the EBRPP, including mental health services. *Id*. at 2.

Through the Amended Complaint, the plaintiff expressly states fourteen counts against the various party-defendants. Rec. Doc. 27 at 16-26. However, Counts 4, 5, 7, 8, 9, and 14 are alleged against the "Sheriff Defendants" only. Notably, Count 14 is labeled as an allegation of "State Claim for Breach of Duty to Provide Medical Treatment (Gautreaux)." *Id*. at 26. While this allegation is unfounded to the extent the Sheriff did not provide the medical care at the Parish jail, it would still not survive where it was properly brought against the City/Parish because there is no evidence of a medical review panel finding in accordance with the Louisiana Medical Malpractice Act, La. R.S. 40:1299.47, *et. seq*. Effectively, there is no claim for medical malpractice or negligence against the City/Parish, and no City/Parish employees have been made party-defendants herein. Rather, the counts alleged against the City/Parish (and no individuals employed by the City/Parish) entail only allegations of intentional deprivation of constitutional rights and damages for loss of consortium, wrongful death, and survival. *Referring to* Rec. Doc. 27 at 16-26; Counts 1, 2, 3, 6, 10, 11, 12, and 13.

The plaintiff relies upon jurisprudence factually distinguishable from this matter. Namely, *Coughlin v. Lee*, 946 F.2d 1152 (5th Cir. 1991) pertains to two police deputies who sued the parish sheriff ("Sheriff") for alleged wrongful termination predicated upon retaliation for their exercise of free speech and political association. *Id*. at 1154. In *Coughlin*, the two fired deputies sought the entire personnel files—including complaints, internal affairs and disciplinary files, but excluding all identification of complainants or confidential witnesses—for various past and/or present employees of JPSO. *Id*. at 1158. The district court allowed production of the files, but limited their production to not include those portion of the files evidencing removal or

6

disclosure of confidential material – misconduct similar to the allegations against the plaintiffs – over approximately a two-year period. *Id*. The Fifth Circuit held:

> To rebut [the Sheriff's] assertion of a permissible reason for their discharge, the plaintiffs must prove that the asserted reason was no more than a pretext. Pretext can be demonstrated by circumstantial evidence. The plaintiffs sought discovery of the personnel files of JPSO employees who had arguably been guilty of a variety of infractions more serious than those committed by plaintiffs, but who nevertheless were not discharged by [the Sheriff]. Allegedly, these employees were political supporters of [the Sheriff] and had contributed to his campaign fund. Evidence of repeated disparity in the punishment meted out to [the Sheriff's] supporters and non-supporters is clearly relevant in considering pretext. In Title VII litigation, in which plaintiffs are similarly required to demonstrate pretext, courts have customarily allowed a wide discovery of personnel files. All or some parts of these personnel files could be central to the plaintiffs' effort to prove pretext. The information contained therein may be in the exclusive control of the opposing party. We need not resort to a particularly broad definition of "relevance" in this case, however, to conclude that the district court's limitation of discovery constituted an abuse of discretion. *Id*. at 1160.

Resultantly, the Fifth Circuit remanded the discovery matter back to the district court to determine what additional discovery of JPSO personnel files should be allowed and under what conditions. *Id*.

Unlike the personnel records in *Coughlin*, the training and disciplinary records of the four LPNs have no bearing on the plaintiff's constitutional claims or the City/Parish's defenses in this matter. In *Coughlin*, the personnel records of other sheriff's deputies were relevant because their contents may directly show that the personnel records of other deputies contained far worse violations than those within the plaintiffs' files, and as a result, same would support their retaliation claim against the Sheriff.

Here, without a claim of medical malpractice and no factual question that the nurses rendered care to Johnson until EMS paramedics arrived, the records are not relevant to the plaintiff's claims and the resultantly, the City/parish do not need said records in support of their

7

defenses. Whether or not the LPNs' actions and care administered was proper or improper is not a federal question of constitutional rights deprivation. Rather, it is limited to a question of medical malpractice or some other unintentional act of negligence. The plaintiff has supplied no jurisprudence in support of medical staff personnel records being relevant to claims of intentional deprivation of constitutional rights. Accordingly, while the deputies' records were pertinent to the claims against them, the LPNs' records are not related to the claims against the City/Parish.

## CONCLUSION

For the foregoing reasons, the City/Parish respectfully prays that the plaintiff's fourth motion to compel be denied precluding the disclosure of the training and disciplinary personnel files of Casani Moton, Thu Thu Fontenot, Kim Bates, and Michelle Antoine in accordance with and F.R.C.P. Rules 26(c) and 37(a)(5)(B).

**RESPECTFULLY SUBMITTED:**
**LEA ANNE BATSON**
**PARISH ATTORNEY**

**/s/ Michael P. Schillage**
**Arthur Howell Andrews (#02480)**
**Sr. Special Assistant Parish Attorney**
**Michael P. Schillage (#35554)**
**Assistant Parish Attorney**
222 St. Louis Street; Suite 902
Baton Rouge, La. 70802
Telephone:   (225) 389-3114
Facsimile:    (225) 389-8736
Email: handrews@brla.gov
            mschillage@brla.gov
*Attorneys for Defendant, City of Baton Rouge/ Parish of East Baton Rouge*

8

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a copy of the foregoing was this date sent to all counsel of record by electronic mail to the email address listed with the Court's electronic filing system, facsimile, and/or U.S. mail, postage prepaid and properly addressed. Notice will be mailed to any party or counsel not participating in the Court's CM/ECF system by this date depositing same in the United States Mail, postage prepaid, and properly addressed.

Baton Rouge, Louisiana this 25th day of April, 2019.

                                        ___/s/ Michael P. Schillage___
                                        MICHAEL P. SCHILLAGE